Opinion of the Court.
THIS was an action of debt, brought in the name of the commonwealth for the use of John Faris, against Moses Fuqua as sheriff of Greenup county, and others as his securities, upon his official bond. The declaration, after setting out the bond and its condition, alleges that Fuqua had not kept and performed the condition of the bond, but bad broken it; and assigns for breach, in substance, 1st. That on the 19th of June, 1812, Faris issued from the Madison circuit court a fi. fa. for $550 besides costs, against the estate of Hard-wick, Harrison and Ward, directed to the sheriff of Greenup county and returnable to the second Monday of August next ensuing; that the same was put into the hands of Fuqua’s deputy on the 6th of July, and by virtue thereof four slaves, the property of Ward, were seized, which were of sufficient value to satisfy said execution, and were advertised for sale bv the deputv *42 of Fuqua; but that Fuqua, by himself or deputy, did not sell the said slaves according to law, and returned that they were not sold for want of bidders. 2d. That afterwards, on the IStliof June, 1813, Faris caused a venditioni exponas to be issued from the office of the clerk of Madison circuit court, directed to the sheriff of Greenup county, which on the 9th of July came to the hands of Fuqua’s deputy; but that the said Fuqua did not, by himself or his deputy, well and truly execute the said writ of venditioni exponas; but altogether failed to do so, and returned that he had advertised the said slaves for sale; that they were claimed by a mortgage given by Ward to Blair and others, who had notified him not to sell; that lie had empanelled a jury, who found against the mortgage; but that it was too late in the day, and that two of the slaves were so ill they could not be conveyed to the place of sale; and that the process had run out and he had not time to sell. The declaration then concludes in the usual form.
The defendants pleaded several pleas. In fhe second plea, which is the only one necessary to he noticed, they allege in substance, that after Faris had obtained the judgment on which the execution in the declaration mentioned issued, to wit, on the-day of-, he, for a valuable consideration to him paid, assigned by his deed the said judgment to Charles Gilky, who on the-clay of-, by his writing endorsed upon the said deed, for a like valuable consideration to him paid, assigned the said judgment to Jesse Daniel, who on the 29th of August, 1814, by his deed released to Ward, one of the defendants in said judgment and execution, all and every pari of said judgment and costs.
To this plea there was a demurrer, and the circuit court being of opinion that the plea was sufficient, gave judgment on the demurrer for the defendants, to which Faris prosecutes this writ of error.
The errors assigned question the correctness of the decision of the circuit court upon the demurrer. For toe defendants it is contended that the decision is correct; 1st. Because the plea was rightly adjudged sufficient by the circuit court; and 2d. Because if the plea he bad, yet the breadles of the condition of the bond as alleged are insufficient to maintain the action.
1. That the plea is bad we have no doubt. The matters alleged in the pica shew; indeed, that Faris *43 had no right to proceed against tbe defendants in tbe original suit; for be having, as the plea alleges, assigned the judgment, and'the assignee having released tbe defendants therein, Faris’ right to pursue the judgment was thereby extinguished. A judgment, it is true, is not assignable at law; but it is so in equity, and the assignment gives to the assignee an authority to use the name of the assignor in. the collection of the debt, in doing which he will be protected by a court of law against the acts of the assignor.. This was so ruled in the case of Marshall vs. Craig, 3 Bibb 291. And- we apprehend it must result as a necessary consequence, that the receipt of the money by the assignee, or his release, would prevent the assignor from proceeding on the judgment.
By the assignment of a judgment the right which the plaintiff at law has to recover against the sheriff, for a neglect or violation of his duty before the assignment respecting executions winch had issued on the j udgment, does not pass to the assignee; nor. is it extinguished by the assignment.
But although the plea would operate as a bar to Fails’ right to pursue the original judgment, we cannot think that it is sufficient to. prevent him from recovering for an injury done him by the sheriff in failing to perform his duty in collecting the money before the judgment was assigned. Tho assignment of a judgment could not operate to transfer the right to recover for such an injury; for a right to compensation for such injury, and the right to the judgment, are separate and, distinct rights. They are separate and distinct, not only in their origin and nature, but in relation to the persons against whom they must be asserted. The right to compensation for tbe injury may, indeed, be said to be incident to the right to the judgment in one sense, for it must necessarily belong to the person who was entitled to the judgment at the time the-injury was done; but it is dearly not such an incident as it must necessarily pass by the assignment of the judgment,. Rent accruing from a tenant for years, may in. like manner be said to be incident to the reversion; but rent which has accrued will not pass by a subsequent sale of" the reversion.
If .the plea in this case had alleged that the judgment had been assigned before the injury complained of was done, it would have- presented a different aspect; hut it does notin terms allege the fact to have been-so, nor is the date of the assignment alleged-so that the fact might be thereby inferred. The. plea, therefore,, Is essentially defective.
Where a declaration on a sheriff’s bond does not allege that any matters returned by the sheriff as facts, are false, they are to be taken as true.
An allegation that a sheriff had levied a fi. fa. on property of one of the defendants sufficient to satisfy it.; that he had advertised the property for sale, and that it was not sold for want of bidders, shows no cause of action against him.
The sheriff having returned a fi. fa. levied on slaves, the property of one of the defendants, nam jug him, the return, is conclusive on the sheriff ás to. the right of' the defendant; and if, ®“a" venditioni exponas, an serted, the" sheriff has no nSht to em' ascertain its validity-
*44 2. With respect to the sufficiency of the breaches alleged in the condition of the bond declared on, there is more room to doubt. The breaches, as will be seen by adverting to tlie statement before given of them, consist, 1st. In thevsheriff’s not selling, according to law, the slaves taken in virtue of the fi. fa. and returning that they were not sold for want of bidders; and 2d. In his not well and truly executing the ven-ditioni exponas.
The first of these breaches, we apprehend, must be insufficient to authorize the actio*. The return of the. sheriff, not being alleged to be false, must be taken to be true; and most obviously, if, as he states in his return, the slaves were -not sold for want of bidders, he could be in no default for not selling.
We arc aware that it has been held, and no doubt correctly, that a sheriff who has taken property in virtue of a fi. fa. may sell after the return of the execution; but we should hesitate very much in saying, that after he had once offered the property for sale and could not sell for want of bidders, of which he had made return, it would be a breach of duty not to have again, offered it for sale before he was required to do so by the plaintiff But, in fact, we do not understand lire breach in question as charging a failure of duty on the part of the sheriff, in not selling the property after the return of the execution. On the contrary, from the manner in which the allegation of the breach in not selling, is coupled with the allegation of the return, we think that it is plainly implied that the breach of duty complained of is in not selling before the execution was returnable. '
3. The second breach presents more difficulty. We must, however, here take the return of the sheriff to be true, because it is not alleged to be otherwise. We must, therefore, assume the fact to be, that the slaves were claimed under a mortgage; that the sheriff was notified not to sell; that he summoned a jury to try the right of property, and that after they found against the claim under the mortgage it was too late to sell; and that, in the language of the return, the process had run out. Taking all this for granted, the sufficiency of the breach to charge the sheriff, turns, we apprehend,on the question "‘Wither he had aright to summon a jury before he was c. to sell? for we *45 must here remarle, that the return day of the venditioni exponas is not alleged, and there is nothing to shew that .after it came to the hands of the sheriff he had more than barely time to advertise and sell before it was returnable. If, therefore, he had a right to summon a jury before he would sell, and after the verdict of the jury ascertaining the liability of the property to the execution, it was too late to sell, and the execution was then returnable, he could not be guilty of nohwell and truly executing it; for, under such circumstances, it was impossible that he could have sold under the venditioni exponas, and the law never requires impossibilities to be done. •
That in general the sheriff has a right to ascertain by the inquest of a jury the right of property taken under execution before he is bound to sell, .there can be but little doubt. The sheriff is bound at his peril to take and sell only the property of the defendant;- and as from the nature of the thing it is impossible he should in all cases know the fact, it i$ but reasonable that he should have the privilege of ascertaining it by the verdict of a jury. It is accordingly laid down,'that he may empannel a jury for the purpose of enquiring in whom the property of the goods taken is vested. Bac. Abr. tit. Sheriffs Ñ. This was the doctrine of the common law, and it has been recognized and an additional efficacy given to it by the statute of the country. 2 Dig. 1047. But the difficulty in the present case, grows out of the former return of the Sheriff that the slaves taken were the property of Ward, one of the defendants in the execution. Having thus taken upon himself, without the intervention of a jury to decide the right of property and to return the fact, we are inclined to think he must be concluded thereby from afterwards denying or controverting its truth. The return would operate as an estoppel to the plaintiff to proceed against any other estate of the defendants, and it ought to be held to be equally an estoppel to the sheriff; and of course if he is estopped from denying the truth, of his return, he could not thereafter have a right to empannel a jury to enquire into the fact, and was consequently bound to sell under the venditioni exponas without such inquest. It results, therefore, that the second breach in the declaration is sufficiently alleged, and as the *46 plea was bad, the circuit court err«d in giving judgment, upon tbe demurrer to it, for the defendants.
The judgment must be reversed with costs, and the cause be remanded for new proceedings to he had not inconsistent with this opinion.