## HENRY DAVIS *v.* EDWARD HERNDON.

1. PRACTICE: EVIDENCE: DEED WHEN CLEARLY INSUFFICIENT MAY BE REJECTED AS EVIDENCE.—Where a plaintiff offers in evidence a deed as a distinct and sufficient ground of his title, the sufficiency of the deed to show title may, upon objection to its admissibility as evidence by the defendant, be then considered by the court, and, if it be insufficient, it may be excluded from the jury; though the more regular mode of procedure would be to admit it in evidence, and for the court afterwards to judge of its sufficiency.

2. SAME: SAME.—When a deed is offered in evidence by the plaintiff in support of his title, which shows title out of him and in another, it may properly be excluded from the consideration of the jury.

3. EVIDENCE: DEED TO PROPERTY IN THIS STATE, MADE AND RECORDED IN ANOTHER STATE, INADMISSIBLE IN EVIDENCE AS A RECORDED DEED.— A deed made and recorded in Alabama, conveying slaves which are, at the time of its execution and registration, in this State, in the adverse possession of another, is inadmissible in evidence as a recorded deed, under the statute of the State allowing deeds, made and recorded in any one of the United States according to the laws thereof, to be admitted as evidence without further proof of their execution.

4. DETINUE: CANNOT BE MAINTAINED AGAINST A PARTY NOT IN POSSESSION.—Detinue cannot be maintained against a party who was not in possession of the chattel at the commencement of the suit. See 1 Saund. Pl. and Ev. 436.

5. CHAMPERTY AND MAINTENANCE: A RIGHT TO SUE FOR A WRONG NOT ASSIGNABLE.—A right of action to sue for a wrongful conversion of property is not assignable: such an assignment would be but a mere transfer of a right to sue for a wrong, and is against public policy and void. Nor is the rule different where the assignment is a mere release or quit-claim of the assignor's right. See *Goodwin* v. *Lloyd*, 8 Porter, 237 ; *Gardner* v. *Adams*, 12 Wend. 297 ; *Dunklin* v. *Wilkins*, 5 Ala. R. 199 ; *McGoon* v. *Ankeny*, 11 Ill. R. 558 ; 3 Littell, 41.

6. SAME: A CHATTEL HELD ADVERSELY BY ANOTHER NOT ASSIGNABLE.— An assignment of a chattel in the adverse possession of a third party claiming it as his own, and which is known to the assignee at the time, is against public policy and void. See *Brown* v. *Lipscomb*, 9 Port. 472 ; *Young* v. *Ferguson*, 1 Littell, 298 ; *McGoon* v. *Ankeny*, 11 Ill. R. 558 ; *Dunklin* v. *Wilkins*, 5 Ala. R. 199.

7. DEED: CONSTRUCTION OF: CASE IN JUDGMENT.—A deed which lends slaves to the grantor's daughter for life, and at her death vests them in her issue, if she have any, but providing that, in case she shall die without issue, "the said slaves are to be considered as a part of the grantor's estate as much as if the deed had never been made, and the said slaves to be equally

divided among the surviving brothers and sisters of the loanee," vests a title to the slaves, upon the death of the first taker without issue, in his surviving brothers and sisters, and not in the grantor.

ERROR to the Circuit Court of Monroe county. Hon. Joel M. Acker, judge.

The plaintiff in error filed his complaint against defendant in error in the court below, in which he alleged " That on the first day of September, 1849, the said plaintiff was seized and possessed as of his own property of certain negro slaves, to wit, [here follow the names and descriptions of the slaves] of great value, to wit, of the value of ten thousand dollars, and having casually lost the said slaves out of his possession, the same came to the possession of the defendant on the day and year aforesaid.

"Yet said defendant, knowing said slaves to be the property of plaintiff, hath not as yet delivered the same to plaintiff, or any part thereof, but unlawfully detains the same, and has converted said property to his own use, by reason whereof plaintiff hath been damaged ten thousand dollars. Plaintiff therefore prays judgment against said defendant for the said negro slaves and their increase, or for the value of said slaves and their increase and hire."

The defendant pleaded a general denial to the allegations of the complaint.

On the trial, the plaintiff offered in evidence, in support of his title, the following deed, made by himself, with the indorsements and certificates thereon, as a duly recorded deed according to the laws of the State of Alabama; to the reading of which, as a recorded deed, the defendant objected, and the court refused to let it be read as a recorded deed, and plaintiff excepted.

The deed is as follows:

" THE STATE OF ALABAMA, BALDWIN COUNTY :

"Know all men by these presents, that I, Henry Davis, of the State and county aforesaid, in consideration of the love, affection, and good will I have for and bear towards my daughter Elizabeth Hannah Morgan, the wife of George G. R. Morgan, do lend her ten slaves, known by the names of [here follow the names and description of the slaves], for her to have the use of them and their increase during her life, and at her death, should she leave a child or children, when they arrive at the age of twenty-one or marry, then

the above-named negroes to be their right and property forever; but should my daughter Elizabeth Hannah Morgan die leaving no child, in that case the said negroes above named are to be considered as part of my estate as much as if this deed of conveyance had never been made, and the negroes above named to be equally divided among her surviving brothers and sisters, to wit, Joseph, William, Richard, Godfrey, Mary Frances, Henry Jackson, and Benjamin Nimrod; and, if either of them be dead, the child or children to have the portion that would be going to the father or mother if they were alive. I wish it to be fairly understood that the above-named negroes are not to be subject to any contract whatever made by my daughter Elizabeth Hannah Morgan or her husband; the profit arising from their labor alone she is to have, reserving to myself the power of control as trustee for my daughter, during my life, and after my death to such persons as I may appoint. In witness, &c.

"1st January, 1843.      [Signed]      "HENRY DAVIS. [SEAL.]"

It is unnecessary to set out the indorsements on the deed, and the certificates of probate and record in Alabama, as these matters were not passed on by the court.

After its rejection as a recorded deed, the plaintiff thereupon proved its genuineness and due execution as an original unrecorded deed, and offered it in evidence in support of his title; and at the same time he offered to prove that his said daughter died in the fall of 1849, without issue, and that her husband died in the winter of same year. To the introduction of this evidence the defendant objected, and his objection was sustained, upon the ground "that the deed showed title, if any, out of and not in the plaintiff."

On objection of defendant, the deed in connection with that proof was excluded from the jury; and plaintiff excepted.

Thereupon the plaintiff offered in evidence a deed of release purporting to be made by the surviving brothers and sisters of Mrs. Morgan, on the 3d April, 1850, by which all the right, title, and interest of the grantors to the slaves conveyed in the aforementioned deed of plaintiff to Mrs. Morgan was released and quit-claimed for a valuable consideration to plaintiff. And the plaintiff, at the time he offered the deed in evidence, and in connection therewith, admitted, "that it was true that before the date of said deed, to wit, on the 1st March, 1850, in the county of Pontotoc, in the State of Mississippi, one W. P. Ghovan, a resident of said county and State, was, and had been, in the sole

and exclusive possession of said slaves sued for in this action, claiming to be the sole and exclusive owner of them and each of them as his own property, to the knowledge of said plaintiff and of the other parties to said deed ; and that the said Ghovan has continued ever since in possession of the same, and was so in possession at the date of the said deed and the commencement of this suit, and now is in possession of the same, claiming them as his property against all persons whatsoever."

Upon objection of defendant, this deed was not permitted to go as evidence to the jury, and plaintiff excepted. This deed was offered as a recorded original deed, proved and recorded according to the laws of Alabama.

The plaintiff offered no other evidence, and verdict and judgment were for the defendant. Plaintiff sued out this writ of error.

*W. F. Dowd,* for plaintiff in error.

I. The first error committed by the circuit judge was, the exclusion of the deed from Henry Davis to Elizabeth Hannah Morgan, his daughter, leaving her the use of the negroes sued for, giving her only the profits, and excluding all power of alienation by her or her husband; retaining in the grantor the right of control as trustee, and providing that, in the event of her death without children, that the negroes should constitute a part of his estate as much as if the deed of conveyance had never been made. This was done solely on the ground that, on the death of Mrs. Morgan without children, the title in fee vested in her surviving brothers and sisters.

1. To make the deed read thus, and have the legal effect contended for, whole clauses and sections of the deed must be stricken out, and a new one must be made to read : " I give the slaves for life to my daughter, and at her death without children to her surviving brothers and sisters." The retention of the legal title as trustee, and the provision " that the negroes are to be considered a part of my estate as much as if this deed of conveyance had never been made," are to be totally abrogated. According to well-established rules of construction this cannot be done. " The construction ought to be made on the entire

deed, and not merely on any particular part of it. *Ex antece-dentibus, et consequentibus fit optima interpretatio.* Therefore every part of a deed ought, if possible, to take effect and every word to operate." 4 Cruise's Dig. 257.

" A construction which requires us to reject an entire clause of a deed is not to be admitted, except from unavoidable neces-sity. We are not at liberty to reject this part of the deed which clearly expresses a meaning more extended than is manifest from other parts of the instrument. *We are bound to presume it was inserted for a purpose, and had its office to perform. We are not at liberty to say it means nothing.*" *City of Alton* v. *Illinois Transp. Co.* 12 Illinois R. 56.

How, then, can the slaves, on the death of Mrs. Morgan, vest in fee in her surviving brothers and sisters, and *constitute a part of their estate,* and at the same time be a part of Henry Davis's estate as much as if the deed had never been made ?

2. It was clearly the intention of the grantor to grant the mere use of the property to the daughter, retaining the title in himself, and if he survived her, and she died without children, the slaves to revert to him and his estate ; or, if he died first, he reserved the power to appoint a trustee for his daughter, and at her death without children to go to her surviving brothers and sisters. The word " and" may be read " or" or *vice versa,* and omission of a word will be supplied. *White* v. *Crawford,* 10 Mass. R. 189 ; 4 Cruise's Dig. 259, sec. 19 ; *Jackson* v. *Topping,* 1 Wend. 394–397. Therefore, if we insert the words, conveying the palpable meaning, " at my death," effect can be given to the whole instrument, and no part of it shall fail; the grantor will own the slaves for his life ; they will be a part of his estate " as much as if the deed had never been made," and the clause giving a remainder in fee to the surviving brothers and sisters will also be carried into effect. The court will look to the entire instru-ment to get at the intention of the grantor, which must govern. *Bridge* v. *Wellington,* 1 Mass. R. 219, 227 ; *Wallis* v. *Wallis,* 4 Mass. R. 135, 136. And the phraseology may be so changed as to carry out the real intention of the grantor, and give full effect to every part of the deed. *Letchfield* v. *Chudworth,* 15 Pick. 27 ; *Frost* v. *Spaulding,* 19 Mass. R. 446 ; Cruise's Dig. 260, sec. 29.

The grantor is the owner in fee simple. Why does he not convey it to his daughter? Because he intended to retain the title in himself, during his life at least. How does he express this intention? 1, he *loans the slaves* to his daughter for her to have the *use of them for her life;* 2, they are not to be subject to *any contracts whatever* of her or her husband; 3, the profit arising from their labor *alone she is to have;* 4, " reserving to myself the power to control as trustee for my life;" 5, with power to appoint a successor; 6, and the controlling clause that, at her death without children, " in that case the said negroes above named are to be considered a part of my estate as much as if this deed of conveyance had never been made;" and, lastly, afterwards or after my death, or if the contingency of the death of my daughter without children shall happen after my death, then the slaves shall be " equally divided between her surviving brothers and sisters."

In deciding a late case, the Supreme Court of Alabama say, " that the cardinal rule is to arrive at the intention of the grantor, from a fair construction of the whole instrument, and if it is apparent that the grantor is unskilled as a legal draftsman, a much wider latitude is allowed." *Hammer* v. *Smith*, 22 Ala. R. 433.

3. But suppose these rules are not applicable, and that one clause of the deed must fail. It is palpable that the grantor meant something by the emphatic, comprehensive words, " in that case the above-named negroes to be considered a part of my estate, as much as if this deed of conveyance had never been made." It is difficult to couch an idea or wish in more clear and distinct, unmistakable English. Words are to be construed according to the common acceptation. An estate is defined to be " such interest as a man hath in lands and tenements, goods and chattels," &c. A man says, " My estate is worth $100,000," or a particular tract of land or set of negroes are " part of my estate."

It is equally certain that at the time of the death of Mrs. Morgan without children, the slaves could not vest in the grantor and constitute a part of his estate, as much as if the deed had never been made, *which is equivalent to a declaration*

*that the deed shall thereby become absolutely void,* and at the same time vest absolutely in the surviving brothers and sisters. If the words, "at my death," cannot be understood and inserted before the phrase, "and shall be equally divided among her surviving brothers and sisters," and the two clauses are irreconcilable, then which must prevail?

"Subsequent words shall not defeat precedent ones, if by construction they may stand together. But when there are two clauses in a deed, of which the latter is contradictory to the former, then the former shall stand." 4 Cruise's Dig. 257, sec. 8. Thus, when the first clause of the deed gave to the trustees, for the sole and separate use of the wife, and the second clause gave to the husband the power to incumber and dispose of the property at pleasure, it was determined that the two were irreconcilable, and the former must prevail over the latter. *Petty* v. *Boothe,* 19 Ala. R. 638–640. See also *Gould* v. *Womack,* 2 Ala. R. 86–88.

4. It is clear that the legal title and the right to control the slaves never passed out of the grantor. It is certainly as competent for him to reserve the power to control as trustee as it is to confer the same power upon some other person. The word "control" is quite as ample and comprehensive as the word "dominion." He "loans the slaves to his daughter, for her to have the *use of them;*" but, for fear of misapprehension, he adds at the close, "it is to be distinctly understood that they, the slaves, are not to be subject to any contract of my daughter or her husband; the profits arising from *their labor alone* she is to have." These strong expressions are utterly inconsistent with the idea that the grantor, by the deed and the delivery of possession under it, parted with the fee to the property, giving to the daughter a life-estate in the negroes, with a contingent remainder to the surviving brothers and sisters; or that he ever intended to part with the title. Suppose that he had loaned them to his daughter for one month, or one year, or two years, with like limitations and reservations, would it be pretended that the title had ever passed out of the grantor? And is there any conceivable difference in principle between a grant for one year and for

life? See this point settled in the case of *Ware* v. *Richardson*, 3 Md. R. 505.

5. It does not appear that Mrs. Morgan, the daughter, had any surviving brothers and sisters at the time of the commencement of this suit, or that there were any descendants of them. Even, then, if the strained construction contended for were valid, and °there were no surviving brothers or sisters or descendants of them, the title would vest in the grantor.

II. It is urged in argument, though the point was not made in the court below, nor does it necessarily arise from the record, that the deed was void on its face, under the statutes of Alabama, because it was not duly and lawfully recorded. To this objection there are many conclusive answers.

1. It is not such a deed as the laws of Alabama require to be recorded, as is well settled by the repeated decisions of that State.

The deed construed by the Supreme Court in the case of *O'Neil, Micheaux & Thomas* v. *Teange*, is almost identical with the one under consideration. 8 Ala. R. 347. It conveyed the title to trustees, instead of· retaining it in the grantor as trustee, and provided that the daughter should have the possession of the slaves for life, and, in the event of her death without issue, the slaves to revert back to the *donor* or *his* heirs. It was held that this was not an incumbrance within the meaning of the first section of the Statute of Frauds, nor did it come within the second section, because possession *bona fide* remained with the donee, and accompanied the deed, and therefore no record of the instrument was necessary.

This case has been affirmed by repeated decisions in that State, and the principles settled applied to other deeds of a similar character. *Newman* v. *Newman*, 12 Ala. R. 29; *Hale* v. *Stone*, 14 Id. 803; *Smith* v. *Ruddle*, 15 Id. 28; *Adams* v. *Broughton*, 13 Id. 731. And this court has established the same principle, that the record of a voluntary deed of this character is never necessary except in cases where the possession does not accompany the deed and remain with the donee or bargainee. *Armstrong* v. *Sumrall*, 26 Miss. R. 275.

2. There is another conclusive answer to the objection. The

deed is valid and binding between the parties and all the world, even if a record were necessary, except creditors and purchasers for a valuable consideration of the grantor or grantee without notice. It is not contended that Herndon is either a purchaser or creditor, but has tortiously obtained possession of the property, and has converted it to his own use as a *wrong-doer.* This has been repeatedly decided in Alabama, where the subject has been much discussed and considered. Before the defendant can make the deed void, he must show himself a creditor, or a purchaser from the party in possession under the deed for a valuable consideration without notice. *McRae* v. *Pegues,* 4 Ala. R. 158; *Myers* v. *Peck,* 2 Id. 648; *Sewell* v. *Gliddon,* 1 Id. 52; *Foster* v. *Mitchell,* 15 Id. 571. The same doctrine held in *Lewis* v. *Gilmer,* 3 S. & M. 562, 563.

In a late case the Supreme Court of Alabama say, that the purchaser must not only show that he is one for a valuable consideration without notice, but he must show that he purchased from the loanee after her title had become complete by a possession of three years; and if the purchase was made before that time, the vendee acquired no title, and his possession after the purchase cannot be linked with the possession of the loanee, so as to complete the three years and render the title valid. *Brainard* v. *McDevitt,* 21 Ala. R. 123, 124.

3. It has been decided in Mississippi and Alabama that the Statute of Frauds has no *extra-territorial operation,* and therefore that it only protects creditors and purchasers in the State where the deed is executed; and to avoid the deed Herndon must show that he acquired his title in Alabama, according to the principle before laid down. *Cook* v. *Kennerley,* 12 Ala. R. 42; *Maul* v. *Hayes,* 12 Id. 500.

4. A mere wrong-doer, a trespasser, as Herndon presents himself, cannot claim the benefit of the Statute of Frauds. He must show himself a purchaser for value *from the party* who holds possession under the deed, and not from a stranger. *Pierce* v. *Turner,* 5 Cranch, 154; *Henderson* v. *Downing,* 2 Cush. 106; *Jones* v. *Punfy,* 1 Vernon, 45; 1 Id. 246; Roberts on Frauds, 378–383.

5. If the possession of the slaves accompanied the delivery of

the deed to the daughter, then the defendant could have acquired no title to them under any conceivable state of circumstances, unless he had purchased from the grantor.

The deed consecrates the use and profits of the labor of the slaves to the daughter, and excludes the marital rights of the husband. The words used are much stronger against the marital rights of the husband than those used in the deed, construed to create a separate estate in the wife, in the case of *Smith, use, &c.,* v. *Henry,* 6 George, 376–379. The daughter being a *feme-covert,* much slighter words are necessary to create a separate estate. *Lamb & Wragg* v. *Stewart,* 8 Porter, 73. See also *Newman* v. *Newman,* 12 Ala. R. 31, 32; *Clarke* v. *Windham,* 12 Id. 798; *Taylor* v. *Stone,* 13 S. & M. 654.

The possession, then, was with the title, and although the record does not show that Morgan even lived with his wife, yet that circumstance could make no difference. And up to the time of the death of Mrs. Morgan, in 1849, there was no mode by which she could convey.

It is then manifest that Herndon never could have acquired any title from Mrs. Morgan, although it is not pretended that he purchased either from the daughter, the husband, or from the grantor. See *Lee* v. *Matthews,* 10 Ala. R. 686, 687; *Inge* v. *Murphy,* Id. 885; *Sewell* v. *Gliddon,* 1 Id. 52.

The deed then should have been admitted as evidence, and the title would have been with the plaintiff under any circumstances, and especially if the defendant failed to show that he was a purchaser for a valuable consideration without notice from the donee in possession.

6. The deed, on its face, was a valid instrument.

The proposition that a party may begin at any point of the testimony he thinks proper has been too often settled by this court to require comment or authority.

Even if the deed conveyed away the property, and showed title out of the grantor, it was competent evidence as a link in the chain of title, for the grantor may in connection therewith show that he afterwards acquired the title.

III. The deed was duly and properly recorded, and a certified transcript of the record offered in evidence, which was excluded

by the court.   Even if such a deed were required to be recorded
—a proposition we have shown to be utterly untenable—it was
done.   See Clay's Dig. 153–159; *Hobson* v. *Kissam*, 8 Ala. R.
357; *Herbert* v. *Henrick*, 16 Id. 597; *Morse et al.* v. *Clayton*, 13
S. & M. 381.

IV. .To obviate all difficulty in reference to the construction
of the deed, some time prior to the commencement of this suit
the surviving brothers and the sister and her husband joined in
a deed, releasing all their interest in the slaves, and all they
acquired by the original deed from plaintiff to his daughter, to
the plaintiff.   This deed was excluded upon the ground that at
the time of its execution the slaves were in the adverse posses-
sion of one Ghovan, claiming title to the same, and that it is void
for champerty or selling a pretended title; and it is argued that
it conveyed only a chose in action, and is void.

1. The English statutes of champerty and maintenance are
not in force in this State.   7 S. & M. 132.   The rule of the
common law, that rights of action cannot be assigned, has in
modern times been reversed; the apprehension that justice would
be trampled down, if *property in action* should be transferred, *is
no longer* entertained.   Experience has fully shown, not only
that no evils result from the assignment of rights of action, but
that the public good is greatly promoted by the free commerce
and circulation of *property in action* as well as *property in posses-
sion.*   This rule is established in New York, and these principles
are laid down by Chancellor Walworth, after a full argument, in
the case of *Tallhimer* v. *Brinckerhoff,* 3 Cowen, 644–646.

The subject underwent a full investigation before the Court
of King's Bench, in the case of *Masters and others* v. *Miller,* 4
Durn. & East's Term R. 202–204.   Mr. Justice Buller says, "that
it is laid down in the old books that, for avoiding maintenance,
a chose in action cannot be assigned or granted over to another.
The good sense of the rule is very questionable, and has been
in modern cases so fully explained away that it scarcely remains,
except as an objection to the form of action.   If a third person
be permitted to acquire an interest in a thing *by deed,* whether
he is to bring the action in his own name, or in the name of
the grantor, does not affect the question of maintenance."   After

a review of many cases, he says: "We may venture to say the motive was a bad one, and it proceeded on a foundation which fails. In many cases courts of law have adhered to the formal objection that the action shall be brought in the name of the grantor or assignor, and not in the name of the assignee. I see no use in preserving the shadow, when the substance is gone; and that it is merely a shadow is apparent from the later cases, in which the courts have taken care it shall never work injustice." Id. 204.

The precise question now before the court came up in the case of the *Brig Sarah Ann*, which was sold while in the adverse possession of another; and the same objection made by counsel here was raised. Judge Story says: "The sale of a ship by a person out of possession is not the sale of a chose in action. I know of no principle of law that establishes that a sale of personal goods is invalid because they are not in the possession of the rightful owner, but are withheld by a wrong-doer. The sale, under such circumstances, is not the sale of a right of action, but it is the sale of the thing itself, and good to pass the title against every person not holding the same under a *bona fide* title for a valuable consideration without notice, and *a fortiori* against a wrong-doer." 2 Sumner, 211.

There are some few American cases without full argument or consideration; but it is respectfully submitted that it is safer to be guided by such illustrious luminaries as Buller, and Walworth, and Story, who have shed floods of light on the profoundest questions and the deepest shades of law, rather than those dim and lesser lights which only lead into the gloom of doubt and perplexity.

2. But the old rule of the common law as to maintenance does not apply to persons who either have any legal interest in the suit promoted by them, or who act under the *bona fide* belief that they have. The conveyance must be to a person who had no legal interest in the thing conveyed, and did not believe he had. Story on Con. secs. 578, 579. Davis, the plaintiff, believed the property belonged to him under the deed. How then can it be said that he bought a pretended title, "to foment strife and litigation?" These authorities are cited and confirmed by the

Supreme Court of Alabama in the case of *McCall, admr.,* v. *Capehart et al.,* 20 Ala. R. 526.

If Davis, when he entered into the agreement and took the release, had reasonable ground to believe that he already had an interest in the property, the contract is not illegal nor void for maintenance. *Furdon* v. *Packer,* 11 Mees. & Wels. 675–682. See opinion of Gurney, Baron.

"It is a principle that any person having an interest in the subject of a suit, whether it be great or small, vested or contingent, certain or uncertain, may enter into an agreement, to prosecute the suit, or purchase the remaining interest, and it is valid and exempt from the operation of the law of maintenance. Again, if there is consanguinity or affinity between the suitor and him who gives aid to the suit, the law and the voice of nature say, it is not unlawful maintenance." *Tallhimer* v. *Brinckerhoff,* 3 Cowen, 647, 648. Davis, the plaintiff, is the father of the grantors in the deed of release. The near relationship exempts him from the operation of the rule. Upon all such cases the law never intended to operate. They were intended to prevent the interference of strangers having no pretence of right in the subject (or property) involved in the suit, and standing in no relation of duty to the suitor. They were intended to prevent traffic in doubtful claims, and to operate upon buyers of pretended rights, who had no relation to the subject of the suit or suitor otherwise than as a mere purchaser of the profits of litigation. 3 Cowen, 648.

3. It will be observed that the rule forbidding the purchase of an interest in a suit, and the purchase of pretended titles, is founded on the same reason; that is, because it would foment strife and litigation; and therefore the decisions quoted are applied directly to both classes of cases.

Suppose that the title vested in the surviving brothers and sisters of the daughter, and they were poor and needy: can it be pretended that it would be illegal for a father, who was able, to advance them five hundred dollars apiece, and sue the wrong-doer? Or, suppose the father poor and needy, would it be illegal for grateful children to surrender to him a doubtful claim? The voice of nature, reason, and the law give the negative.

4. The law never operated upon a mere release or quit-claim when the party obtaining it claimed the property for himself. Chancellor Kent lays down the rule thus: "Every grant of land, *except as a release*, by a person out of possession, and where it is in the actual adverse possession of another, is void as an act of maintenance;" and this rule, he adds, was founded on a state of society which does not exist in this country. No case or principle can be found which would extend the harsh rule to a mere release or quit-claim.

*James T. Harrison* and *Charles R. Crusoe,* for defendant in error.

I. The deed was not legal evidence.

1. In order to have been admitted to probate in Alabama, such a deed, under the Statute of Frauds, must have been acknowledged or proved in the circuit or county court, and within twelve months. It was proved before a justice of the peace four years and a-half after its date. *Sewell* v. *Glidden,* 1 Ala. R. (N. S.) 52; *Adams* v. *Boughter, admr.,* 13 Id. 746; *Foster* v. *Mitchell,* 15 Ala. R. 571.

2. And the essentials in a probate are wanting. These are, under the Alabama statute, that the witness should swear to the subscription of all the parties, setting out their names; that the witnesses subscribed in the presence of the maker of the deed, and in the presence of each other, on the day and year named in the deed. *Fipps* v. *McGehee,* 5 Porter, 413; *Dolin* v. *Garden,* 15 Ala. R. 578; *Broch* v. *Headen,* 13 Id. 370; *Shelton* v. *Armor et al.,* 13 Id. 652.

II. The next supposed error is, that the same deed was ruled out, as evidence, when offered as an unrecorded instrument. It was ruled out upon the ground that it did not tend to sustain the issue, and that it did not show title *in,* but *out of,* the plaintiff. See copy of the deed in the record.

1. The bill of exceptions shows that it had been proved, at the time, that the plaintiff's daughter, Elizabeth Hannah Morgan, to whom the property by the terms of the deed was lent for life, had departed this life in the fall of the year 1849, without leaving any child or children alive at the time of her death.

VOL. X.—32

Upon the death of the daughter without leaving such issue, the property was limited in remainder to her surviving brothers and sisters.

Assuming, even, that the donor was, by the terms of the deed, a *trustee* for his daughter, the tenant for life, (and how could he convey to himself?) his right and title, as such, terminated at her death, in the year 1849, long before the institution of this suit. The daughter was a married woman, and at the concluding part of the deed the donor states: "I wish it to be fairly understood that the above-named negroes are not to be subject to any contract whatever made by my daughter, Elizabeth Hannah Morgan, or her husband; the profit arising from their labor alone she is to have, reserving to myself the power of control as trustee for my daughter, during my life," &c.

After the death of the daughter the "power of control" ceased and determined. The father was no longer trustee for the tenant for life, and he was not a trustee for those entitled to the absolute property in remainder after the termination of the life-estate. The avowed object of the trust was, that the negroes were not to be subject to any contract whatever of the daughter or of her husband, but that the daughter was to have the profits of the labor of the slaves; and therefore the donor reserved to himself the *control* of said slaves as trustee for his daughter. At the death of the tenant for life the object of the trust was fully accomplished, and then the negroes were to be equally divided among "her" surviving brothers and sisters; and how could the donor remain trustee after the slaves were equally divided? The trust continued only so long as was necessary for the purposes of the trust. When the objects of a trust are fully performed, the title of the trustee ceases, and the legal as well as the equitable title vests in the beneficial owner, unless the intention of the grantor that the legal title should continue in the trustee *clearly* appears. *Comby and wife* v. *McMichael,* 19 Ala. R. 747; *Smith* v. *Ruddle,* 15 Id. 28–31; *Mitchell* v. *Mitchell,* 35 Miss. R. 115; *Coulter et al.* v. *Robertson,* 24 Miss. R. 341, 279; *Jones* v. *Cole,* 2 Bailey, 330; *Liptrot* v. *Holmes,* 1 Kelley, 381–390; *Freeman* v. *Perry,* 2 Dev. Eq. 243; 9 Paige,

110, 523; 3 East, 533; 5 Id. 162; 1 Barn. & Cress. 342, 336; 1 Barn. & Adol. 530.

3. By the terms of the deed the donor did not reserve to himself the right of *possession*, at any time. The deed not having been duly recorded, and the daughter having been put in possession of the property, *the title followed the possession.* 2 Ala. R. 648; 12 Id. 612; 4 Id. 40; 4 Id. 158, 159; 20 Id. 505, 506; 21 Id. 123; 3 S. & M. 563; 8 Leigh, 88; 9 Yerger, 206.

4. If the property at the time of the death of the tenant for life was to be "considered" a part of the donor's "estate," yet, at most, it amounted only to an *instantaneous seisin*, and the legal estate was immediately transmitted to the parties entitled in remainder. The title, in such case, remained but a moment in the donor, and instantly vested in the parties in remainder, and the donor's title ceased and determined.

III. The plaintiff next offered as evidence a supposed deed purporting to have been made by Joseph W. Davis and others to the plaintiff, in Baldwin county, Alabama, on the 3d day of April, A. D. 1850, the plaintiff admitting that the slaves mentioned in it were, at and before its date, and ever since, in the State of Mississippi, in the adverse possession of one William T. Ghovan, who claimed them as his own, as a *bona fide* purchaser, in said State of Mississippi, to the knowledge of the plaintiff, and the other parties to said supposed deed. This deed was rejected as evidence, for the following reasons:

1. There was no proof of the execution of the same by the subscribing witnesses, or otherwise.

2. The attempted record in Alabama was null and void. The instrument, at most, was a mere bill of sale of slaves, and no law of Alabama authorized or required its registration.

3. The property was in Mississippi at the time of the attempted conveyance, probate of the deed, and the attempted recording, in Alabama, and has been ever since. The recording and probate laws of Alabama could not attach. There was no jurisdiction in the officers.

4. This suit was instituted in the year 1852; and on the 1st March, 1850, and ever since that time, William P. Ghovan, to the knowledge of the parties, was and has been in the actual,

adverse, and exclusive possession of the property attempted to be conveyed, claiming it as his own against the whole world. The form of action is trovor—a tort—for the unlawful conversion of the property. The plaintiff's right of action, if the supposed deed conferred any title, did not accrue until after the purchase by and possession of Ghovan. The defendant never has been in the possession of the property since the date of the deed, and the deed cannot relate back to any prior conversion. There never has been any possession in the defendant, or conversion by him, since the plaintiff obtained title under such deed.

To maintain trover the plaintiff must prove that he had property in the goods which are the subject of the action, at the time of the conversion by the defendant, who has converted them; that the defendant has been guilty of a wrongful conversion, &c. The plaintiff must prove property in the chattel, and the right of possession at the time of conversion. Harper's Law R. 299; 5 Eng. (Ark.) 211; 5 Denio, 497; 7 Blackf. 361, 6 Id. 209 ; 9 Yerger, 262; 6 Blackf. 442, 470; 1 Brev. 495; 4 Dev. 70; 22 Pick. 535; 2 Saund. Pl. & Ev. 872.

5. But the supposed deed does not undertake to convey any right of action *for a tort*, if it could be done. It is a mere "release and quit-claim" to the slaves themselves, the property itself. There is no attempted transfer or assignment of a lawsuit for a prior conversion of the property.

6. The plaintiff's right of action, if he has any, is against Ghovan, who has the property in possession, and had, at the date of the deed. He detained it, and not the defendant. It is admitted that the defendant never has been in possession of the property since the plaintiff's right accrued, and consequently he could not have unlawfully converted the same, nor could the plaintiff have casually lost the same. Until the date of his title he had nothing to lose.

7. The deed is a mere release and quit-claim, and only conveys to the plaintiff all the right, title, claim, and interest which the grantors may have acquired under a certain deed of gift, (describing it,) "recorded" in Baldwin county, &c. This is the same deed, and the attempted record thereof, that had already been rejected as evidence by the court, and how can the release

and quit-claim be introduced separately, or the quit-claim deed amount to any title by itself? And can the other deed and the insufficient record thereof be made evidence by the mere recitals in another deed to which the defendant is not a party? The quit-claim deed only undertakes to convey such right, &c., as the grantors may have acquired under that deed alone.

8. But the deed was void, on the grounds of public policy. The suit is not for the property itself, but the unlawful conversion of it. But detinue could not be maintained. There was no possession in or detention by defendant. Where a chattel is converted, and the conversion is known to the owner, he cannot, by sale, transfer the title to another, so as to enable the latter to sue in his own name. *Dunklin* v. *Wilkins et al.*, 5 Ala. R. 199, 200; *Goodwyn* v. *Lloyd*, 8 Porter, 237; *Brown* v. *Lipscomb,* 9 Id. 472; *Stedman* v. *Reddick*, 4 Hawks, 29; *Stagdale* v. *Fugate*, 2 Marsh, 136; *McGoon* v. *Ankeny*, 11 Ill. 558; 3 Litt. 41; *Mabry et al.* v. *Herndon*, 8 Ala. R. 846, 848; *Bell* v. *Smith*, 5 Barn. & Cres. 188; *Morrison* v. *Deaderick*, 10 Humph. 345; *Armstrong* v. *Cooper*, 11 Ill. 560; *Gardner* v. *Adams*, 12 Wend. 297.

HANDY, J., delivered the opinion of the court:

This action was brought, under the statute of 1850 in relation to pleadings in actions at law, for the recovery of certain slaves, with hire, &c., from the defendant, to which the defendant pleaded a general denial of the allegations of the complaint.

On the trial the plaintiff offered in evidence a copy of a deed from the County Court of Baldwin county, in the State of Alabama, where it was recorded; and the defendant objected to its introduction, on the ground that it was not duly recorded according to the laws of that State. The objection was sustained, and the copy excluded, the plaintiff excepting. The plaintiff then proved the execution of the deed by the proper witnesses, and offered it in evidence as an original deed, not recorded, in support of his title; offering to prove, at the same time, that the plaintiff's daughter, Elizabeth Hannah Morgan, had died in the year 1849, leaving no child, and that her husband subsequently died in the same year. To the introduction of this

evidence the defendant objected, on the ground that the deed showed title out of the plaintiff and did not tend to maintain the issue on his part; and the objection was sustained and the deed excluded, the plaintiff excepting.

These rulings are the grounds of the two first errors assigned. We will proceed to consider first the second ruling, which is the first error assigned.

It is to be observed that the objection to the evidence applies rather to its sufficiency to show title in the plaintiff, than to its admissibility; and hence that it would have been more in accordance with established practice for the court to have admitted the evidence, and afterwards have pronounced upon its sufficiency to show title in the plaintiff, in connection with any other evidence which the plaintiff might have adduced. But, inasmuch as the plaintiff relied upon the deed as a distinct and sufficient ground of his title, no prejudice was done to him by considering the question whether he had title under the deed, upon an objection to its admissibility. The question, therefore, which is material to be considered, is, whether the deed shows title in the plaintiff.

The deed was executed by the plaintiff in the action. It is a deed of gift, by which the donor "lends" to his daughter, Elizabeth Hannah Morgan, wife of George R. G. Morgan, the slaves in controversy, "for her to have the use of them and their increase during her life, and at her death, should she leave a child or children, when they arrive at the age of twenty-one years or marry, then the slaves to be their right and property forever, but should his daughter die leaving no child, in that case the said negroes are to be considered as part of my [his] estate as much as if this deed had never been made, and the said negroes to be equally divided among her surviving brothers and sisters"—who are named—" and if either of them be dead, the child or children to have that portion that would be going to their father or mother if they were alive. I wish it to be fully understood that the above-named negroes are not to be subject to any contract whatever made by my [his] daughter, Elizabeth Hannah Morgan, or her husband; the profit arising from their labor alone she is to have, reserving to myself the power of control as trustee for my

daughter during my life, and after my death to such person or persons as I may appoint."

It is contended that the clause—that in the event of the daughter's dying leaving no child, "the slaves are to be considered as part of his estate as much as if the deed had not been made"—operated to revest the title in the donor upon her death leaving no child, to the exclusion of any interest in her surviving brothers and sisters.

But it is evident that this is not the true construction of the clause; for immediately following it and in direct connection with it is the limitation that, upon her death without issue, the slaves are to be equally divided among her surviving brothers and sisters—which is wholly irreconcilable with the construction contended for.

It appears that the object of the donor was merely to "loan" the slaves to his daughter, giving her "the profit arising from their labor alone," during her life, and to exclude any property in her in them and to prevent their being subjected to any contract made by the daughter or her husband. And to that end, he reserves to himself the power to control the slaves as trustee for her during his life, and after his death to such person or persons as he should appoint. The clause relied on to support the title of the plaintiff is unskilfully introduced; but the intention is manifest from the whole instrument. That intention was, to exclude the idea that any interest was to vest in the daughter, which should continue after her death; but upon her dying without issue, that the slaves were to be considered as part of his estate. But to what end were they so to be considered? The instrument continues immediately to declare this—that the slaves were, in the event stated, "to be equally divided among her surviving brothers and sisters." This is a clear conveyance of an estate in remainder to the surviving brothers and sisters, to take effect on the death of Mrs. Morgan, without issue; and this estate is as positively conveyed by the deed as is the loan to Mrs. Morgan for life with remainder to her children that might survive her. Hence it is very clear that the deed divested the title of the donor; and of itself did not tend to show title in him.

The ruling of the court was, therefore, correct; and as the

same view is applicable to the copy of the deed offered, no pre-
judice was done to the plaintiff by the exclusion of it, if it be
conceded that it was properly proved and recorded.   It is there-
fore immaterial to the substantial merits of the case whether the
copy was correctly excluded or not for the reason upon which it
was excluded; for, if admitted, it would not have shown title in
the plaintiff.

The plaintiff next offered in evidence a deed of quit-claim and
release executed to him by the surviving brothers and sisters of
. Mrs. Morgan, dated 3d April, 1850, conveying to him their in-
terest in the slaves; and, in offering the same, admitted that on
the 1st March, 1850, William P. Ghovan was in the actual and
exclusive possession of these slaves, in Pontotoc county, in this
State, claiming them as his own property, to the knowledge of
the plaintiff, and that Ghovan has been since that time, and was
at the time of the commencement of this suit, in such possession,
to the knowledge of the plaintiff.   And thereupon the defendant
objected to the introduction of this deed, and the objection was
sustained, the plaintiff excepting.

This ruling of the court is the last error assigned.

We think that no error was committed in this, to the plaintiff's
prejudice, for several reasons.

1. If the action be regarded as for *trover* and conversion, it
appears that the slaves were in the adverse possession of Ghovan,
at and before the date of the quit-claim deed to the plaintiff; and
the alleged conversion must have been committed before the date
of that deed.   And it is well settled that the deed could not con-
vey a right of action for conversion against the defendant, who
had committed the alleged wrongful act before the title of the
plaintiff to the property accrued; for that would be the assign-
ment of a mere right to sue for a wrong; which is against the
policy of the law.   *Goodwin* v. *Lloyd,* 8 Porter, 237; *Dunklin* v.
*Wilkins,* 5 Ala. R. 199; *McGoon* v. *Ankeny,* 11 Ill. 558; 3 Littell,
41; *Gardner* v. *Adams,* 12 Wend. 297.

2. If the action be regarded as *detinue,* the deed conferred no
title upon the plaintiff; because, at its date, the slaves were in
the adverse possession of a stranger, claiming them as his prop-
erty, to the knowledge of the plaintiff when he accepted the deed.

The deed was therefore inoperative to convey title. *Brown* v. *Lipscomb,* 9 Porter, 472; *Young* v. *Ferguson,* 1 Littell, 298; *McGoon* v. *Ankeny,* supra; *Dunklin* v. *Wilkins,* supra.

But, moreover, detinue could not be maintained, because, at the institution of the suit, the slaves were in the possession of Ghovan, and it is necessary that this form of action should be brought against the party having the slaves in possession. 1 Saund. Pl. and Ev. 436.

3. The deed was offered as a registered deed in Alabama, without further proof of its execution. It appears that the slaves were, at the time of its execution and registration, in this State, and in the adverse possession of Ghovan. The registration in Alabama was, therefore, invalid, and inoperative as to the rights of parties holding the slaves in this State; and on this ground the instrument was inadmissible as a recorded deed.

Judgment affirmed.