STATE *ex rel.* BERRY, *Dist. Atty., v.* HUNDLEY, *et al.*

[87 South. 890.  No. 21659.]

1. OFFICERS. *Bond of officer binding on every person who subscribes it.*

A bond, delivered and approved as a bond of a public officer required by law in order that he may hold and receive the emoluments of the office, is binding on every person who subscribes it under the provisions of section 3463, Code of 1906 (section 2801, Hemingway's Code), although the office is erroneously described therein.

2. OFFICERS. *Bond of officer security for duties subsequently imposed on him.*

The bond of a public officer is a security, not only for the performance of the duties incumbent on him when the bond was executed, but for such other duties, not different in kind, which the legislature may thereafter impose on him.

3. COUNTIES. *Loss through issuance by treasurer of receipt for moneys derived from bonds before it came into his possession covered by bond.*

It is the duty of a county treasurer not to issue a receipt for money derived from the sale of county bonds until the money has come into his possession, and any loss resulting to the county because of· the issuance by the treasurer of such a receipt before actually receiving the money is covered by his official bond.

4  COUNTIES. *Treasurer's bond security for purchase money of bonds prematurely receipted for.*

Where a treasurer of a county enables a bank to receive the purchase money of bonds sold by the bank for the county by delivering to the bank his receipt for the money to be delivered by it to the purchaser of the bonds, and fails to collect such money from the bank and turn it over to his successor in office, his official bond is security therefor, although his successor could have himself collected the money from the bank.

APPEAL from chancery court of Tishomingo county.

HON. A. J. McINTYRE, Chancellor.

Suit by the state, on the relation of J. E. Berry, for the use of Tishomingo· County against W. N. Hundley and others. Decree for defendants, and plaintiff appeals. Reversed, and decree against defendants.

*W. J. Lamb,* for appellant.

The statute making the county treasurer also treasurer of the money belonging to good road district, expressly says that he shall be liable on his bond, but does not require or say anything about giving an additional bond.

When Hundley qualified as treasurer in January, 1908, he made bond as required by law and took charge of his duties as county treasurer, and in April, the board of

supervisors required Hundley to give an additional bond, which was done and was approved at a special term of the board of supervisors held on the 15th day of May, 1908, and this is the bond that suit is brought on to recover for the default on the part of Hundley in failing to pay over said money.

On the trial of this cause the court allowed the bonds-men to testify over the objections of the appellant, that they would not have signed the bond if they had have known that the bond was to cover this specific fund.   We contend that such a defense ought not to have been allowed, and the objection to this proof should have been sustained instead of overruled.

We further contend that it makes no difference whether they would have signed it or not; they did sign it, and are liable as such, we don't suppose there is any person who would sign a bond for the forthcoming of money, if he knew the principal was going to be in default, and that is about all that can be said for such a defense on the part of the appellees.

Chapter 149, of the Acts of 1910, makes the funds coming into the hands of the county treasurer for the purpose of building good roads as much a general county fund as any other fund that comes into his hands, and expressly says that the county treasurer shall be liable on his bond.

Now, let's look at the bond itself and see what it says: "Wherefore, the condition of this obligation is such, that if the said W. M. Hundley shall faithfully perform and discharge all the duties of said office of treasurer general county fund and all acts and things required by law, or incident to the said office of county treasurer of Tishomingo county, Mississippi, during his continuance therein, then the above obligation to be void, otherwise to remain in full force and virtue."

The court will notice that this bond not only required Hundley to faithfully perform and discharge all of the duties of said office of treasurer general county fund, but

also further provides that he would faithfully perform and discharge all acts and things required by law or incident to said office of county treasurer of Tishomingo county, in Mississippi.

Section 6 of chapter 149 of the Acts of 1910, made him treasurer of this fund, and the act also provides that he is liable on his bond therefor. No special bond is required by law for the protection of this fund, but it comes into his hands by virtue of his office and placed there as much by law as any other fund that comes into his hands.

The case of *Hall* v. *Lafayette County,* 69 Miss., page 529, is directly in point and decides every proposition against the contention of the appellees in this case and in favor of the appellant, and the same defense was made in the case of *Hall* v. *Lafayette County, supra,* that is being made in this case, and the court in that case held against the contention of the appellee.

In the case of *Hall* v. *Lafayette County, supra,* page 539, the court said: "If the general bond given should be so worded as to include, in terms, school money, the obligors would be bound for such money, for the requirement by statute of an additional bond, in an amount not less than the school funds likely to be in his hands at any one time, looks to the fact, and not the form of security, and may be satisfied by a single paper as well as several."

Quoting again from the same opinion, the court said: "But if the constituted authorities, through ignorance, inadvertence or otherwise, in dealing with this matter were to not follow the law by requiring a separate and additional bond for the performance of his duties by the county treasurer as to school-funds and to take a bond at the beginning expressly stipulating for the performance of all his duties, including his dealings with school-funds it would be enforceable according to its terms, because of the contract."

This bond in question expressly provides that Hundley shall faithfully perform and discharge all acts and things required by law or incident to said office of county treas-

urer.  Now, one of the things required by law was that he should be treasurer of the good road district fund, and the law provides that he shall be liable on his bond for such funds.

We think the remark of the court in the case of *Hall* v. *Lafayette County, supra,* very applicable to this case, when the court said: "It is incontrovertible that Hall and his sureties intended to give a bond sufficient in its penalty and its terms to cover all moneys that should be in his hands from every source.  They contracted for that, and designed in good faith to carry out the contract, and thought they had done so, and it was an afterthought to escape liability because only one bond was given."

We think the bondsmen in this case when they say that they would not have signed the bonds if they had known it was to cover this money, is only an afterthought to escape liability.

Section 2801 of Hemingway's Code, expressly provides: "if irregular in any other respect, such bond, if delivered as the official bond of the officer, and serving as such, shall be obligatory on every one who subscribed it for the purpose of making the official bond of such officer to the full penalty, or, if it has no penalty, to the full penalty of the bond which might have been required."

This bond was made, signed and sealed as the official bond of the county official, and the statute provides that when this is done the bond shall be obligatory on every one who subscribes it, for the purpose of making the official bond of such officer to the full penalty.  We do not see how the appellees can be serious about the defense made by them in this case.

In the case of *Arnold* v. *The State,* 77 Miss. 463, this court said: "We regard the rule as settled in this state that the public officers are liable on their official bonds for the absolute safety of all moneys coming into their hands, unless when it is lost by the act of God or the pub-

lic enemy. It was so ruled by this court in the case of a tax collector's bond in *State* v. *Lee,* 72 Miss. 281."

The bondsmen in this case are like all other endorsers they took the risk when they went on Hundley's bond. The board of supervisors are looking to Hundley's bondsmen, and the bondsmen will have to look to their unreliable, or unfaithful, principal.

In the case of *Griffin* v. *Levee Commissioners,* 71 Miss. 770, this court said: "The idea that the tax collector may make a general deposit of public money in bank and thereby absolve himself from liability to pay over as he is by law required to do, is so utterly unreasonable as to need no combating. Like all others depositing funds in bank, the tax collector took the risks involved in so doing. The board looks to its officer, and the officer must look to his unreliable or unfaithful banker.

According to the chancellor's opinion, when he decided the case, the appellant is entitled to recover. He finds in his opinion that Hundley was county treasurer, that Hundley had the money to his credit in the bank, and that Hundley has never paid this money over to his successor or anyone else. The chancellor also finds that the appellees signed his bond, and because of this fact he was able to perform the duties as county treasurer and hold the office of county treasurer; still, the chancellor says that while Hundley owes the money, and defaulted in the payment of the same, and fails and refuses to pay the money, still his bondsmen are not liable for anything.

We submit to the court that a mere statement of the case, a mere statement of the undisputed facts and the admitted facts, is a complete argument of this case, and that the appellant was entitled to a judgment against the bondsmen of Hundley, county treasurer.

The decree of the court finds that complainant is entitled to a decree against the defendant W. M. Hundley upon his bond as treasurer of said county in the sum of thirty-five thousand seven hundred dollars less the amount paid on said amount, to-wit: Twenty thousand six hun-

dred nine dollars and thirty-six cents; together, with interest thereon at the rate of six per cent. per annum, from the first Monday of January, 1912, it being the second day of said month, until paid, and the cost in this case, for the payment of which execution may issue at law.

We respectfully submit to the court that this case should be reversed and that judgment be given by this court against his bondsmen for the amount shown to be due according to the decree of the chancellor.

*Boone & Worsham,* for appellees.

Appellees are not liable as sureties on Hundley's bond in this suit for the reason: First, because they only signed the bond for the general county fund and not for any special fund. Second, because there was no law at the time they signed the bond sued on in this case authorizing any such funds to go into the hands of the treasurer, nor was there any law at the time they signed this bond authorizing the issuance of the bonds, the proceeds of which is sued for in this case.

There can be no doubt from this record that the bond sued on in this case was simply for the general county fund and was not intended to cover any other funds. We, therefore, contend that although the bond provided in the printed portion thereof that Mr. Hundley should faithfully perform and discharge all the duties of the office of treasurer yet following that expression immediately is the words "general county fund," and in the whereas clauses it is referred to as a bond for the general county fund. There can, therefore, be no serious controversy over the fact that the real contract undertaken by the appellees as sureties on Hundley's bond was to protect the general county fund. At the time this bond was executed the general county fund was well understood and it could not possibly have been in contemplation of the parties making the contract that they were contracting for the security of a fund three times, and which could just as easily have

been ten times, greater than the amount of the bond they were executing. Nor can it possibly be contended that they were executing or contracting to secure a fund for which there was at that time no law in the state of Mississippi by which the fund sued for in this case could be created.

Appellant relies upon the case of *Hall* v. *LaFayette County,* 69 Miss. 529. I have no quarrel with the principles laid down in the Hall case. Indeed, the Hall case is direct authority for my contention. The reason the court held the sureties liable for the secured bond in the Hall case was that when they signed what was called the general bond that the evidence in the case showed that the sureties were intending to secure all funds coming into the treasurer's hands as treasurer; and the facts in that case show that it was the intention of Hall and his sureties in giving that particular bond to secure the proper disbursement of all the funds that were to come into his hands, and the penalty of the bond was fixed with a view to this end. Page 531 of the Hall case; and the court upheld the bond in the Hall case to be enforcible because of the contract, independent of the statutory effect of the bond. The court further said in the Hall case while there was no formal and express agreement as to the terms of the bond, it was as plainly implied from what occurred as if it had been expressed.

In the case at bar everything shows that the clear intention of these sureties was simply to be sureties on a general county bond, and not for any special funds whether it be for security or any other purpose that would have an effect to create a liability out of and beyond the ordinary liability of a county treasurer on his general county bond.

The only way to hold appellees on this bond for this fund sued for in this case would be for equity to make contract for parties; but the Hall case, *supra,* says: "Equity will not make contracts for parties. Its power is confined to enforcing those made by the parties." In the Hall case the sureties were made to pay because it was

clearly in the mind of the parties to secure the school fund; but in the case at bar it cannot be contended by any stretch of the imagination that it was in the minds of the parties making this contract sued on in this case to secure the funds sued for in this case. It was necessary to reform the bond in the Hall case to make it comply with the contract actually made by the parties, but there is not a single fact in this record that would justify the reforming of the bond in this case so that it would cover any other fund than the general county fund, as understood at the time the bond was signed.

One of the most frequent applications of the so called *strictissimi juris* rule, that the liability of sureties on official bonds is confined to the obligations, and terms as assumed by them is with reference to their responsibility for their principals in the performance of duties imposed by the legislature subsequent to the execution of the bond. Sureties are persons favored by the law. Their obligations are ordinarily assumed without pecuniary compensation and are not to be extended by implication or construction. The liability, is as it is observed, *strictissimi juris*. They have a right to stand upon the terms of their obligation, and having consented to be bound to a certain extent only their liability must be found within the terms of that consent strictly construed. *Morrow* v. *Wood,* 56 Ala. 1.

The holding of the courts is uniform on this subject. Chapter 149 of the Acts of 1910, section 6 thereof, under which this road district was created does not provide that money for the sale of the bonds shall be placed in the treasury. It simply provides in said section 6 that the proceeds of such bonds is to be used alone in the construction of the highway.

Section 5 of said Act provides that the board of supervisors shall appoint three commissioners whose duty it shall be to have the management and supervision of the construction and maintenance of the road built under the provision of this act, and so far as the act is concerned

the money might just as well be placed in the bank to the credit of the commissioners, as it would be needed for immediate distribution in constructing the road.

Said section 6 does, however, provide that the board of supervisors shall levy an annual tax for the maintenance of said road and for paying the bonds and interest thereon, and this tax fund shall be paid into the county treasury and the treasurer is liable on his bond and shall keep a separate account thereof; but this provision with reference to the county treasurer clearly applies to the tax collected to pay the bonds and maintain the road and the only way for this money arising from the sale of the bonds to go into the treasury, for which the treasurer would be liable on his bond, would be by implication rather than by any direct statute.

In the case of *Monroe County* v. *Clar,* 25 Hun. (N. Y.) 282, the court held that where the duties of the county treasurer were increased by requiring him to handle an additional fund, and default arose in connection with the funds usually handled by him as well as any additional fund, his sureties, while not responsible for the default in the latter, were not discharged from liability as to the former.

The first case that I now recall in which this court declared these township funds to be county funds was the *Wilkinson County case,* 69 Miss. 865, and this court so declared these township funds county funds upon the language of the Act of the Laws of 1912, chapter 194. This Act was not passed until long after Mr. Hundley's term of office expired, and over four years after the bond in this case was executed; and the above decision was not rendered until November, 1915, and the conclusion of the court interpreting statutes passed long after the execution of this bond ought not to have the retroactive effect to fix liability on a bond executed years before the passage of these section statutes and the construction thereof by the court.

The court gave a decree against W. M. Hundley, treasurer, in this case for the obvious reason that there was no answer filed by him or defense made to the suit, and the question of his liability was never raised in the trial of the case. Neither are the sureties in this case bound by any litigation had in this matter in which the sureties were not a party.

All the litigation with reference to this failure of the Bank between other and different parties, and appellees in no way were connected therewith in any shape, form or fashion, and nothing that was adjudicated in those suits applies to the sureties. *Lipscomb* v. *Postell*, 38 Miss. 476; *Mann* v. *Yazoo City*, 31 Miss. 577.

SMITH, C. J., delivered the opinion of the court.

This is a suit upon the bond of W. M. Hundley, a former treasurer of Tishomingo county, Miss., to recover money of the county which came into the hands of the treasurer, and for which he failed to account.

Hundley assumed the office of treasurer of Tishomingo county in January, 1908, and in May, 1908, his bond was adjudged insufficient by the board of supervisors and an order was entered, directing him to execute a new bond, pursuant to which the bond here sued on was executed and approved. The bond recites:

"Whereas, the above bounden W. M. Hundley was duly elected to the said office of county treasurer general county funds of said county of Tishomingo on the 5th day of November, A. D. 1907, for the term of four years, from the first Monday of January, A. D. 1908:

"Therefore the condition of this obligation is such that if the said W. M. Hundley shall faithfully perform and discharge all of the duties of said office of treasurer general county funds and all acts and things required by law, or incident to the said office of county treasurer of Tishomingo county, Mississippi, during his continuance

therein, then the above, obligation to be void, otherwise to remain in full force and virtue."

When the bond was executed the duty of the county treasurer was to "keep the moneys of the county, and to disburse the same agreeably to law;" to "faithfully observe and discharge all the duties that may, from time to time, be required of him; and at the expiration of his office, he shall deliver to his successor all money, . . . belonging to the county." Section 978, Code of 1906 (section 4157, Hemingway's Code).

Chapter 149, Laws of 1910, approved March 3, 1910, provides for the construction by the boards of supervisors of one or more highways in one or more of the supervisors' districts of a county, and to issue and sell the bonds of the district or distracts in order to obtain money with which to construct the highway or highways. Section 6 of this chapter provides that the treasurer of the county shall be the treasurer of the funds arising under the provisions of the statute and liable on his bond therefor.

In 1911 the board of supervisors of Tishomingo county issued bonds of one of the supervisors' districts of Tishomingo county under the provisions of this statute to the amount of thirty-five thousand dollars, the sale of which was negotiated for the county by the Tishomingo Banking Company. This banking company was not a county depository, but Hundley kept the county's money on deposit with it. The bonds were sold by the banking company to the Bank of Commerce & Trust Company of Memphis, Tenn., the cashier of which delivered to the Tishomingo Banking Company his check for the amount of the bonds payable "to the order of treasurer of Tishomingo county, Mississippi, when accompanied by a receipt of county treasurer on form supplied by us." This check was indorsed by Hundley, and the receipt referred to therein was signed by him, and both were delivered by him to the Tishomingo Banking Company, which delivered the bonds and cashed the check about three weeks before the expiration of Hundley's term of office. Hundley did not account to

his successor for the money received from the sale of these bonds, and claims not to have known that the sale had been consummated. The money received for the bonds was entered by the Tishomingo Banking Company on its books to the credit of the "Good Roads Fund District No. 1." This bank afterwards became insolvent, but the county succeeded in collecting from its receiver a portion of the money received by it for the bonds. This suit is to recover from the treasurer and his bondsmen the balance of this fund. There was a decree *pro confesso* against Hundley, but the bondsmen answered, denying liability, and on final hearing the bill was dismissed as to them, and the state has appealed to this court.

The contentions of the appellees are: First, the bond referred to covers the general county fund only, and not special funds of the character here in question; second, the bond does not cover duties imposed upon the treasurer after it was executed; third, the money arising from the sale of the bonds did not come into Hundley's actual possession and control; fourth, the money arising from the sale of the bonds, having been credited by the Tishomingo Banking Company to the credit of the good roads fund district No. 1, the right thereto passed to Hundley's successor by operation of law when he assumed the office.

First. The fact that Hundley's office was erroneously described in the bond as "county treasurer general county funds of said county of Tishomingo" will not relieve the appellees of liability thereon for the funds here in question, for the bond was subscribed by them and delivered and approved as the bond required of Hundley by section 3469, Code of 1906 (section 2807, Hemingway's Code), in order that he might continue to hold, and receive the emoluments of, the office of county treasurer, and when such is the case the bond is binding on every one who subscribes it, to the same extent that it would have been had the office of the principal obligor been properly described therein. Section 3463, Code of 1906 (section 2801, Hemingway's Code).

Second.  The duty imposed on county treasurers of receiving and disbursing the money derived by the county from the sale of bonds issued under the provisions of chapter 149, Laws of 1910, is in no way different in kind from the duty of receiving and disbursing other moneys of the county, and an official bond is security, not only for the performance of the duties incumbent upon the officer when executed, but for such other duties, not different in kind, which may be thereafter imposed by the legislature upon him. *Denio* v. *State,* 60 Miss. 949; 22 R. C. L. 503; 27 Amer. & Eng. Enc. Law, 2d Ed., 542.

Third.  It is immaterial whether the money paid by the Bank of Commerce & Trust Company of Memphis, Tenn., for the bonds came into Hundley's actual possession or not, for it was his duty to have obtained possession of the money before issuing a receipt therefor, and because of his failure to discharge this duty the Bank of Commerce & Trust Company obtained the bonds, but the county failed to obtain the money therefor, and the bond sued on covers the "discharge" of "all the duties that may, from time to time, be required of him."

Fourth.  It is true that Hundley's successor had the right to collect this money from the Tishomingo Banking Company, but that does not relieve the appellees, for it was Hundley's duty to have collected it himself from the purchaser of the bonds, and to have paid it over to his successor.

The decree of the court below in so far as it dismissed the bill will be reversed, and a decree will be rendered here against the appellees for the money sued for, not to exceed in amount the penalty of the bond.

*Reversed, and decree here.*