NATIONAL SURETY CORPORATION *et al. v.* STATE, FOR USE OF ROGERS.

(In Banc.  Oct. 28, 1940.)

[198 So. 299.  No. 34193.]

W. U. Corley, of Collins, for appellants.

**Butler & Snow**, of Jackson, for appellant, National Surety Corporation.

**E. L. Dent**, of Forest, for appellee.

**McGowen, J.,** delivered the opinion of the court.

This was an action at law wherein Mrs. Rogers sought to recover from George A. Newton, County Superintendent of Education of Covington County, and the National Surety Corporation, surety on his official bond, the face value of certain certificates issued by Newton as County Superintendent to various parties of which Mrs. Rogers became the owner for a valuable consideration.

The issues were made up after separate demurrers had been filed and overruled in the court below. The evidence was submitted to the jury and a verdict returned for the full amount sued for, with six per cent interest thereon to date of verdict, and the court below entered judgment accordingly.

The action is based upon a paragraph of Section 14, Chapter 255, Laws 1936, which appears on its face to be amendatory of Sections 6739, 6740, Code of 1930. The entire Act is lengthy and consists of twenty-two sections. The exact language of the applicable part of Section 14 relied on for recovery is as follows: ''And it shall be unlawful for any county superintendent of education to issue pay certificates to teachers, school carriers, or other persons, in excess of the amount of money received on account of the public schools for the current fiscal year or in excess of the budget estimates for the current fiscal year, and any certificate so issued shall be illegal and void; but the county superintendent shall be liable on his official bond to the holders of such certificates for the face value thereof.''

That which preceded the above quotation from Section 14 made it unlawful for the county superintendent to incur obligations in excess of the available school funds, or in excess of the budget for the fiscal school year.

That which follows made the violation of the provisions of this Act a misdemeanor for the county superintendent to make contracts with teachers or school carriers, or to incur indebtedness in excess of the available funds, or the budget estimate for that year, or issue pay certificates in excess of the amount of money received or in excess of the budget estimate.

By statute, the fiscal year for public schools begins July 1st of a year and ends thereafter on June 30th.

The pay certificates were issued to designated teachers and school carriers beginning in November 1937, the third month of the school term, and continued at intervals to May, 1938. There were seven pay certificates issued by

the county superintendent to school teachers aggregating $175.16, and forty such certificates were issued to school carriers aggregating $1,242.05.

The evidence shows that Mrs. Rogers acquired these certificates by advancing their value to the payees, and that she was assignee thereof. It further appears that Mrs. Rogers presented the certificates to the chancery clerk and was refused warrants therefor on the ground that there were no funds in the county depository with which to pay them.

The county superintendent was required to prepare and file a detailed budget of expenditures for the support, maintenance and operation, and at the same time, he was required to file a detailed statement of the revenue from all sources, including amounts to be received from the state common school fund, the state equalizing fund, county school tax levy and poll tax collections, and balance of money on hand to the credit (in the county treasury) of the common school fund. See Section 4, Chapter 255, Laws 1936.

(1) When the above mentioned budget was filed with the state superintendent, the latter had the option to approve it or not or have it revised, conditioned upon his estimate of revenue, in writing, certified to the county superintendent. When approved by the state superintendent, it became the duty of the county superintendent to file a copy thereof with the board of supervisors, and thereupon it became the duty of that board to have the budget entered upon its minutes.

The proper evidence of the budget was the minutes of the board of supervisors. There is some evidence that some kind of budget was made and filed at some indefinite time, but the nature is so obscure as to render this record practically unintelligible, and the proof is insufficient to uphold a judgment thereon.

(2) Newton's bond, as county superintendent, appears to have been executed on the 29th day of November 1935, and his surety, National Surety Corporation, was ap-

proved December 5, 1935. The bond was for $3,000 and contains this recital: "The condition of this obligation is such, That, whereas the above bound George A. Newton was duly elected to the office of Superintendent of Education of said County on the 5th day of November, A. D. 1935, for the term of four years, from the 6th day of January, A. D. 1936, therefore, if he shall faithfully perform all the duties of said office during his continuance therein, then the above obligation to be void, otherwise to remain in full force and virtue."

Newton entered upon, and was at the time of the issuance of the certificates engaged in, the discharge of the duties of the office.

It is insisted that the official bond was executed and in force months before the statute was enacted, especially Section 14; and that by enforcement thereof an additional burden is placed upon the surety which did not exist at the time the bond was executed and went into effect when Newton took over the office; and these additional burdens, duties and liabilities placed upon the principal-official are different in kind from those theretofore imposed.

Liability is sought in the case at bar on Section 14 of the Act, and especially on the language of the part thereof above set forth, supra.

Referring to Section 6732, Code of 1930. Liability was imposed on the county superintendent in these words: "It shall be unlawful for the superintendent to issue pay certificates to teachers in excess of the amount of money received on account of the public schools for the current year and any certificate so issued shall be illegal and void; but the superintendent shall be responsible on his bond to the holders for face value of such certificate and shall be so liable to any person whom he may cause to teach in a public school and for whose payment there is no money in the treasury."

Progressively, the Legislature has been enlarging, in detail, the duties of a county superintendent, as to the

form of budget and procedure as to the budget, but for the first time there is found in Section 14 the penalty prescribed and imposed upon the county superintendent as to his exceeding the budget, and includes therein a penalty for issuing certificates to common school carriers in excess of the budget estimate for the scholastic year. The penalty imposed is for the issuance of certificates to teachers in excess of funds received during the .fiscal year. See Section 6732, Code of 1930. In addition thereto, such penalty for the issuance of certificates in excess of the budget and to carriers was added by Section 14.

In Trantham v. Russell, 171 Miss. 481, 158 So. 143, it was pointed out that the carriers were not included in Section 6732 of the Code.

We do not think the duties and liability of the superintendent imposed by Section 14 are in any way different in kind from those imposed by law theretofore, the superintendent and his surety were bound not only for the performance of the duties incumbent when the bond was executed and became effective; but for such other duties, not different in kind, which was thereafter imposed, see State ex rel. Berry v. Hundley, 125 Miss. 355, 87 So. 890, and authorities there cited.

(3) It is insisted that Mrs. Rogers, as assignee of the several certificates, could not maintain this suit on the bond because it is to recover a penalty and not assignable, and the right is personal to the payee of the certificate.

The general rule is that a right to recover a penalty is not assignable. 21 R. C. L. 211, section 6. The right to sue is governed by the language of the statute.

Upon whom does this Section 14 confer the right to recover this penalty? The statute confers that right to sue upon the holders of such certificates. It fixes liability of the county superintendent on his bond for the certificates so issued to the holders thereof. Unquestionably, Mrs. Rogers, as assignee, was the holder of these certif-

icates. See Anderson v. Moore Dry Goods Co., 152 Miss. 312, 119 So. 914.

The language of Section 6732 of the Code strongly supports this view as to the issuance of certificates to school teachers. This Court has said as to said section: "And the purpose of the statute in making the superintendent responsible on his bond for the face thereof to purchasers is to protect purchasers against the fraud of the superintendent in issuing them." See McDonald & Sons v. McQueen (Miss.), 194 So. 473, 474.

(4) Appellant next asserts—Appellee did not prove that the certificates sued for were the certificates issued in excess of the money received on account of the public school's account for the current fiscal year or in excess of the budget estimate for that year.

The evidence shows that from November 1937 to June 1938 and thereafter, Mrs. Rogers presented these certificates to the chancery clerk of that county and demanded from him warrants therefor, which the clerk declined to issue because, as she was informed, there were no funds with which to pay the warrants to the credit of that fund. In this, she was corroborated by the clerk and his deputy. It further appears, however, that during the same period, other certificates of like tenor were paid out of the public school funds.

Taking the entire record, unsatisfactory as it is, we can safely say that no particular or special date is shown when a designated certificate was issued which on that date was for an amount in excess of the funds received for that account in that fiscal year.

The record does show, by an audit made by the state auditor, that there was alleged to be an excess of such certificates over the money received of about $26,000, and it may further tend to show by inference that these particular certificates were embraced in that $26,000 excess, as of June 30, 1938.

The evidence further shows that the board of supervisors drew large sums from the treasury, presumably from

these funds, to pay a deficit for a former year. This, however, is not clear. The whole record is very confused and unsatisfactory.

We think the record shows further that there were available funds in the county treasury during the months of November and December 1937, and January, February and March 1938, from which these certificates could have been paid.

The verdict of the jury was doubtless the result of an erroneous instruction, given by the court at appellee's request, to the effect that if Mrs. Rogers presented these certificates to the chancery clerk for payment, and when so presented there were no funds available with which to pay them, then there was liability by the superintendent and his surety.

Whether the clerk captiously or arbitrarily declined to issue warrants for these certificates is a matter of some doubt, as he testified in effect that certain obligations were to be paid at all events.

This statute is highly penal and must be strictly construed against the penalty.

The fair meaning of the statute is that the liability is imposed upon the superintendent for the face of a certificate, which, when issued, was in excess then and there of the public school funds received during the entire year. We know that these funds come from various sources, and no certain date can be fixed for the state auditor to remit certain funds, or for the sheriff to remit the ad valorem and poll taxes. This very fact shows that this statute is for the benefit of the purchaser of certificates. Why should the school teacher or carrier of school children assign them if the money was actually in the treasury when the certificates were issued by the superintendent? The payee of a certificate could cash it without sacrifice of time or money, as easily and as readily as an assignee. Some of these certificates were issued early in the scholastic term. There was $112,000 to $114,000 received for that purpose during that fiscal

year. There being only a claimed excess of $26,000, it is evident that the certificates were issued at a time when funds were available for their payment.

In order to recover the penalty on the face of such a certificate, the burden is on the holder to establish by competent evidence that the issuance of the particular certificate was at that time in violation of Section 14, and that the certificate was then in excess of the funds received for the fiscal year and not the funds on hand at the date of its issuance. It was not the design, intent or purpose of the Legislature to have these schools operate a month more or less and close down until funds allocated were actually paid into the county treasury.

This case is being sent back to be tried on principles herein announced.

Reversed and remanded.