FARMER, et al. *v.* HUMPHREYS COUNTY MEMORIAL HOSPITAL, et al.

41050. March 2, 1959 109 So. 2d 356

36

*Wynn, Hafter, Lake & Tindall,* Greenville; *Neill, Clark & Townsend,* Indianola, for appellants.

*Howard Davis,* Indianola; *John S. Holmes,* Yazoo City; *Hugh Varnado,* Belzoni, for appellees.

HALL, J.

This suit was brought by Grady Herring, a resident of the State of Texas and Humphreys County Memorial Hospital, his assignee, for the benefit of Dr. John S. Barr and four nurses in the hospital against Willie Farmer, R. D. Mallette, James Ray Rhodes and Tom Eddy for the recovery of damages for personal injuries sustained by Grady Herring on May 19, 1955 and from a judgment for $30,000 against all of the defendants, only Willie Farmer and R. D. Mallette appeal.

The proof showed that Eddy is a resident of Texas and was the owner of a 1954 GMC tractor and trailer which at the time of the injury to Herring was being operated by James Ray Rhodes, and Eddy was also the owner of a 1953 Ford tractor and trailer which at the time of the injury in question was being driven by Grady Herring.

Mallette was the owner of an International farm tractor on the front of which was attached a long bar of steel, thirteen and a half feet in length, to which there was attached a four-row cultivator, and on the occasion in question this farm tractor with the cultivator attachment was being driven and operated by Willie Farmer who was an employee of Mallette and was acting in the course and scope of his employment.

The two vehicles owned by Eddy had been sent from Houston, Texas to Belzoni, Mississippi. They each had a large trailer attached and at Belzoni these trailers were loaded with oats for transportation to Houston, Texas. When both trailers had been loaded, the two drivers left Belzoni and traveled north on U. S. Highway 49-W until they reached the bridge across Sunflower River, a short distance south of Indianola, at about twelve noon.

Mallett's International tractor with the bar and cultivator attachment had been at a farm owned by him at Boyle, Mississippi, and he had instructed Willie Farmer to move the International tractor and attachments to another farm operated by him several miles in a southeasterly direction from Indianola. Boyle was a b o u t twenty miles from Indianola and the other farm was somewhere in the neighborhood of eight or ten miles southeast of Indianola, so Willie Farmer had to move this equipment over the public highways of Mississippi for a distance of about thirty miles. The bar in question was thirteen and one-half feet in length and could have been removed from the International tractor and replaced when he reached his destination, which operations would have taken a total of about two hours, but Farmer proceeded on his way without removing the attachments.

Near Indianola the tractor broke down and Willie had to be towed to town in order to have repairs made, after which he proceeded on his way. Upon reaching the bridge across Sunflower River, he entered the bridge, completely blocking thirteen and one-half feet of the

bridge and not leaving sufficient room for an ordinary vehicle to pass him. Just as Farmer was near the south end of the bridge, he saw the Rhodes and Herring trucks approaching from the south. According to their testimony they were traveling at the rate of twenty or twenty-five miles per hour. Rhodes was in the lead and he met the International tractor just as it was getting off the south end of the bridge. He testified that he first saw the cultivator attachment about thirty feet away and that the cultivator blades were then extending about four or five feet into his lane of traffic, which is to say on the wrong side of the center line of the highway. He testified that immediately he hit his brakes and struck the side of the bridge and the tractor at about the same time and that his left rear tire struck the cultivator and was blown out, and he was positive that there was no red flag or any other kind of warning on any part of the tractor.

Herring testified that when Rhodes suddenly stopped he immediately got on his brakes and his truck started to ''jack-knife'' and he tried to straighten out his load and in so doing was pulled over toward the center of the highway and saw the tractor and ran into it, turning partially around, and then ran into the rear of the Rhodes' truck. In this collision he was pinned into the cab of his truck and suddenly he discovered that his gasoline tank, immediately underneath his seat, was on fire and he began to scream for help. Rhodes ran back and got hold of his arm and finally pulled him out of the truck cab, and his clothing was burning so badly that Rhodes told him to jump overboard into the river, which he did and in a very few moments a highway patrolman arrived on the scene and carried Herring immediately to the hospital in Belzoni where he remained under treatment about seven months after which he was transferred to the Veterans' Administration Hospital at Houston, Texas, where he remained an additional ten months.

Herring was positive that there was no red flag or other kind of warning signal on or about the International tractor.

We have stated the high points in the testimony of the defendant, Rhodes and of the plaintiff, Herring. One Thomas Reynolds of Zavalla, Texas was riding in the cab of the truck with Rhodes and he fully corroborated the version given by Rhodes and Herring. The highway patrol testified for plaintiff that there was no flag or warning on the cultivator and that traffic could not pass. At the scene of the accident the patrolman made several photographs which were introduced in evidence and appear in the record. Nobody except Farmer himself testified that there was any warning sign on the front of the cultivator. The patrolman said there was none and several of the witnesses for the defendants testified that they saw no kind of flag or other kind of warning on the cultivator and out of all the numerous people who saw the cultivator both before and after the wreck, not one testified of having seen any warning on the cultivator.

The appellants contend that the verdict in this case is contrary to the weight of the evidence and argue that the sole proximate cause of the collision was the combined negligence of Rhodes and Herring, but we think that we have stated enough of the evidence to show that there was ample testimony to take the case to the jury.

Under this head appellants argue that the Rhodes vehicle passed the cultivator without any collision, but they ignore the direct testimony of both Rhodes and Herring as well as that of Thomas Reynolds who was riding with Rhodes and they ignore the further fact that Herring had to stop the moment he got beyond the cultivator.

Under this heading appellants also argue that Herring's vehicle crossed the center line and collided with the cultivator. Herring did not deny that his vehicle crossed the center line and collided with the cultivator

after his truck "jack-knifed" and while he was undertaking to straighten it up, but they overlooked Herring's testimony to the effect that when the cultivator loomed up so near him, here was no passing room and he had to apply his brakes as quickly as possible, causing his truck to "jack-knife" and swerve over toward the center of the highway.

■■ As their second point the appellants argue that the plaintiffs' instructions Nos. 4, 5, and 10 are erroneous in view of the fact that the appellees invoked Sec. 8265 of the Recompiled Code of 1942 and do not give sufficient emphasis to Sec. 8264. The latter section makes it a misdemeanor for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or vehicles of a size or weight exceeding the limitations stated in Article 16 on the subject of highways and motor vehicles and further providing that the provisions of this article shall not apply "to implements of husbandry temporarily moved upon a highway." Appellees invoke Sec. (b) of Sec. 8265 which provides that: "The total outside width of a farm tractor shall not exceed ten feet." The appellants would have us adjudicate first that you can add as much in the way of attachments as you may desire to make the farm tractor more than ten feet in width and further argue that the tractor in this case, being moved a distance of nearly thirty miles over the highways of this State and across a bridge less than twenty feet in width, is only temporarily on the highway. This, we decline to hold.

The appellants' third main point is that the lower court erred in refusing its instructions Nos. 1 and 8.

Instruction No. 1 was a complete peremptory instruction and from what we have heretofore said was clearly correctly refused.

Instruction No. 8 would have told the jury that it matters not how wide the farm tractor, with its attach-

ments may be, it is not negligence to drive it temporarily on the highway, and we think this instruction was correctly refused.

 The proof shows that the amount actually owed by Herring to the hospital, the doctor and the nurses was the sum of $8,266.46 and appellants argue that it is an unjust enrichment to permit appellees to recover more than this amount. What the appellants ignore is that Grady Herring was also a plaintiff in this suit and he participates in the recovery.

In 4 Am. Jur., Assignments, Sec. 27, page 251, it is said: "Statutes in some jurisdictions specifically provide for the assignment of certain choses in action ex delicto. In a few jurisdictions, as a result of statutory provision, a liability for a tort may be sold, transferred, or assigned to almost the same extent as a chose in action sounding in assumpsit. For the purpose of the present discussion, torts may be divided into two main classes; those which affect injuriously the estate, real or personal, of a party, and those which cause injuries strictly personal. The fact that a cause of action is non-assignable has been held to be immaterial where both assignor and assignee are before the court as parties plaintiff."

Section 1448 of the Recompiled Code of 1942 specifically provides that if the assignment be in writing, as it was in this case, the assignee of any chose in action may sue for and recover on the same in his own name, and in case of a transfer or an assignment of any interest in such chose in action before or after suit brought, the action may be begun, prosecuted and continued in the name of the original party, or the, court may allow the person to whom the transfer or assignment of such interest has been made, upon his application therefor, to be substituted as a party plaintiff in said action.

In the case of W. Calvin Wells, Jr. v. Edwards House and City Railway Co., 96 Miss. 191, 50 So. 628, this

Court held that a cause of action for personal injuries may be assigned in whole or in part.

To the same effect is the case of Bolivar Compress Co. v. Mallett, 139 Miss. 213, 104 So. 79.

We are of the opinion that there is no merit whatsoever in any of the questions raised by the appellants and, there being no other contention that the verdict is excessive, the judgment of the lower court will be affirmed.

Affirmed.

*Roberds, P. J.,* and *Lee, Kyle,* and *Gillespie, JJ.,* concur.