393 So.2d 1328 (1981)
PREFERRED RISK MUTUAL INSURANCE CO.
v.
Jessie C. COURTNEY et al.
No. 52259.
Supreme Court of Mississippi.
February 18, 1981.
*1329 George E. Dent, Aultman & Aultman, Hattiesburg, for appellant.
D. Gary Sutherland, Joseph O'Connell, Heidelberg, Sutherland & McKenzie, Hattiesburg, for appellees.
Before SMITH, SUGG and LEE, JJ.
SUGG, Justice, for the Court:
The question in this case is, may an insurance company recover from a tort feasor, under a subrogation clause in its policy, the amount paid its insured for medical expenses and loss of income due under the terms of the policy; when, (1) the insurance company did not secure an assignment from its insured for the amounts paid, (2) the insured filed suit against the tort feasor, (3) the insurance company notified the tort feasor of its claim of subrogation after the suit was filed, and (4) the tort feasor settled with insured after notice of the subrogation claim? We answer the question no for the reasons hereafter stated in the opinion.
The complainant, Preferred Risk Mutual Insurance Company, filed an amended bill of complaint against defendants, Mrs. Lorene Farris, her minor son, Frank Farris, and Government Employees Insurance Company to recover $4,525.21 paid its insured for medical expenses and loss of income under the terms of its policy. An interlocutory appeal by complainant from a decree sustaining defendants' demurrer was dismissed on the ground the appeal was improvidently granted. Upon remand, the trial court entered a decree confirming its earlier decree and dismissed the defendants with prejudice. Complainant has appealed from this final decree.
The amended bill of complaint also named as defendants Jessie C. Courtney, Mrs. Imogene L. Courtney, Mrs. Sherry Warrick Courtney, Jessie Wayne Courtney, Ruben Warrick and Mrs. Ruby Hancock Warrick. Complainant alleged it had paid Mrs. Imogene L. Courtney and Sherry Warrick Courtney $4,525.21 under the medical payment and loss of income provisions of its policy and sought recovery from these six defendants under the trust agreement provisions of its policy.
After the trial court sustained the general demurrer of the three defendants as noted above, complainant dismissed its suit against the six remaining defendants. Any claim of complainant against these defendants is not an issue here.
Complainant alleged in its amended bill of complaint that it issued a standard automobile insurance policy to Jessie Courtney on April 2, 1973, which contained the following provisions:
COVERAGE C-1. AUTO-MATIC PAY
TO PAY:
MEDICAL EXPENSE BENEFITS
All reasonable expenses resulting from bodily injury, sickness or disease, including death resulting therefrom caused by accident and incurred within one year from the date of accident, for necessary medical, surgical, x-ray and dental services, including prosthetic devices and necessary ambulance, hospital, professional nursing and funeral services, subject to *1330 the limits stated below under Limits of Liability.
LOSS OF INCOME BENEFITS
Eighty-five (85) percent of loss of income resulting from bodily injury, sickness or disease, caused by accident, for the period of continuous total disability beginning the fifteenth day after the accident and terminating one year and fourteen days from the date of the accident, or at death, whichever occurs first, not in excess of $750.00 per month.
PERSONS INSURED
Division 1. To or for the named insured and each relative so injured while occupying or through being struck by an automobile.
Division 2. To or for any other person so injured while occupying:
(a) the owned automobile while being used by the named insured, by any resident of the same household or by any other person with the permission of the named insured, or
.....
SUBROGATION. In any event of any payment under Coverage C-1 of this policy, the company shall be subrogated to all the rights of recovery therefor which the injured person or anyone receiving such payment may have against any person or organization and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.
TRUST AGREEMENT. In the event of payment to any person under Coverage C-1
(a) the company shall be entitled, to the extent of such payment, to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury, sickness, disease or death because of which such payment is made;
(b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization because of the damages which are the subject of claim made under this part;
(c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;
(d) if requested in writing by the company, such person shall take, through any representative designated by the company, such action as may be necessary or appropriate to recover such payment as damages from such other person or organization, such action to be taken in the name of such person; in the event of a recovery, the company shall be reimbursed out of such recovery for expenses, costs and attorneys' fees incurred by it in connection therewith;
(e) such person shall execute and deliver to the company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the company established by this provision.
Complainant also alleged that Wayne Courtney, the son of Jessie Courtney, was driving his father's insured automobile on April 8, 1973; that Wayne's wife, Mrs. Sherry Warrick Courtney, and mother, Mrs. Imogene L. Courtney were passengers in the automobile; and that Frank Farris, the son of Mrs. Lorene Farris, was driving his mother's automobile and negligently collided with the automobile being driven by Wayne Courtney resulting in serious personal injury to the two passengers in the Courtney automobile. Mrs. Farris had a liability policy issued by Governmental Employees Insurance Company covering her automobile.
Complainant attached, as exhibits to its amended bill, copies of declarations filed in the circuit court by Mrs. Imogene L. Courtney and Mrs. Sherry Warrick Courtney against Mrs. Lorene Farris and her son Frank Farris. Mrs. Imogene L. Courtney sued for medical expenses, loss of income, pain and suffering and property damages. She sought judgment for actual damages in *1331 the sum of $20,000 and punitive damages in the sum of $5,000. Mrs. Sherry Warrick Courtney sued for medical expenses, loss of earning capacity, and pain and suffering. She sought recovery of actual damages in the sum of $15,000 and punitive damages in the sum of $5,000.
Complainant alleged it notified all defendants of its subrogation rights under its policy after the suits were filed but before the defendants in the circuit court suits settled with the plaintiffs. Complainant attached as an exhibit to the amended bill a general release signed by Mrs. Imogene L. Courtney and her husband, Jessie C. Courtney, releasing the defendants from all claims on account of the collision for $6,000. Complainant also attached as an exhibit a general release signed by Mrs. Sherry Warrick Courtney, her husband Wayne Courtney, and her parents, Ruben Warrick and Mrs. Ruby Hancock Warrick releasing defendants from all claims on account of the collision for $5,000.
Complainant contends that the defendants are liable to it on the theory that a tort feasor who settles with an injured party after notice of subrogation by the injured party's insurance carrier is liable to the insurance carrier for the amount the tort feasor pays to the injured party to the extent of the insurer's payment even though the tort feasor obtains a general release from the injured parties.
There is a conflict of authority in states that have considered the rights of an insurer to recover from a tort feasor on the theory of subrogation. The conclusions reached by the courts in other states may be summarized as follows.
1. If a tort feasor obtains a release from the insured with knowledge that the insured has been indemnified by his insurer, such release does not bar the right of subrogation of the insurer.
2. Although a tort feasor settles with the insured and obtains a general release after notice that the insurer has paid the insured in accord with its policy, such settlement and release bars the insurer's action against the tort feasor for reimbursement. The courts taking this position reason that the subrogation rights of the insurer are best protected by blaming the insured instead of the tort feasor, who is a stranger to the contract.
3. An insurer has no direct cause of action against a tort feasor for payments made under its policy because its claim for recovery is based solely upon a contractual liability owed by the insurer to its insured.
4. An insurer has no cause of action against a tort feasor because claims of personal injuries are not assignable at common law.[1]
See Couch on Insurance 2d § 61:197-198 (1966), Annot. 19 A.L.R.3d 1054 (1968); Annot., 92 A.L.R.2d 102 (1963); Annot., 78 A.L.R.2d 822 (1961), and cases cited.
It is not necessary for us to determine which of the above positions we consider is correct because we are of the opinion that complainant is not entitled to recover under the facts alleged in the amended bill because of the collateral source rule. Under this rule, a tort feasor is not entitled to have the damages for which he is liable reduced by proving that an injured party has received compensation from a collateral source wholly independent of the tort feasor. The rule was stated in Coker v. Five-Two Taxi Service, 211 Miss. 820, 52 So.2d 356 (1951) as follows:
The appellant also assigned as error that the Court erred in permitting the appellee on cross-examination of appellant, over objection, to testify to the amount of money that he had received under the Workmen's Compensation Law. We are of the opinion that this evidence was incompetent. 25 C.J.S., Damages, *1332 Sec. 99, states: "Compensation or indemnity for the loss received by plaintiff from a collateral source, wholly independent of the wrongdoer, as from insurance, cannot be set up by the latter in mitigation or reduction of damages, and, by some authorities, this rule also applies to payment of salary or expenses.
"The wrongdoer is not entitled to have the damages to which he is liable reduced by proving that plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, wholly independent of him. Under this general rule, insurance in behalf of the injured person cannot be set up by the wrongdoer in mitigation of the loss." To the same effect is 15 Am.Jur., Damages, Sec. 201. (211 Miss. at 825, 826; 52 So.2d at 357)
The rule was followed in Ward v. Mitchell, 216 Miss. 379, 62 So.2d 388 (1953). An exception to the collateral source rule appears in Horton v. Brooks, 325 So.2d 912 (Miss. 1976). In that case we held that a plaintiff could not recover medical expenses paid by the Medicaid Commission because section 43-13-125 Mississippi Code Annotated (1972) gives the Medicaid Commission exclusive right to recover payments for medical assistance made by the Commission. In Horton, we stated:
In our opinion, this statute clearly gives the Medicaid Commission the exclusive right to make claim for or bring suit for sums paid by the Medicaid Commission for medical assistance to a recipient for injuries, disease or sickness caused under circumstances creating a cause of action in favor of the recipient against any person, firm or corporation.
The authorities relied upon by the appellant which permit an injured person to recover for medical assistance paid gratuitously or by insurance companies, benefit societies, fraternal societies, employers and other collateral sources are not applicable where the benefits are paid by Medicaid, as the statute gives the exclusive right of recovery for such payments to the Medicaid Commission. (325 So.2d at 915, 916)
Coker and Horton are not in conflict because the decision in Horton was mandated by statute.
In the case filed by the two Mrs. Courtneys in circuit court, the Farrises, who were defendants, were not entitled under Coker to have the damages reduced by proving the plaintiffs had received compensation for their medical expenses and loss of income from the complainant in this case because the payments were from a collateral source wholly independent of the defendants. Moreover, when defendants settled the circuit cases, they could not reduce the settlements by the amount received by plaintiffs from a collateral source.
Complainant did not allege in its amended bill that it secured an assignment from the Courtneys of their claim against the defendants to the extent of the payments made by complainant to the Courtneys. If the Courtneys had assigned their claim against the defendants to the extent of the payments received by them from the complainant, the defendants in the circuit court action would have been entitled to a reduction of damages equal to the amount of the assignment.
By failing to secure an assignment from the Courtneys, complainant left the defendants in the circuit court damage suits liable for all damages to the plaintiffs. Complainant now seeks to recover, in an equity court, damages from the defendants which, if permitted, would amount to double recovery from the defendants for the same damages. Complainant could have prevented double recovery by securing an assignment; this, it failed to do. It is contrary to all principles of equity to allow double recovery when it could have been prevented by the one seeking double recovery.
The fact complainant notified the plaintiffs and defendants in the circuit court cases, after suit filed and before settlement, that it claimed subrogation does not aid complainant in this case. Absent an assignment, defendants in the circuit court cases remained liable for all damages because of *1333 the collateral source rule. We therefore hold complainant failed to state a cause of action and the demurrer was properly sustained.
Complainant contends it is entitled to recover under our holding in Employers Mutual Casualty Co. v. Meggs, 229 So.2d 823 (Miss. 1969). In that case the insured executed a written assignment to the insurance company who requested the tort feasor to pay for the damage to insured's automobile. After the tort feasor received this request he settled with the insured for $3,000 for all liability arising out of the collision in which the insured's son was injured and in which insured's vehicle was damaged. We held that the insurance company's suit should not have been dismissed. We distinguish Meggs because the insurance company secured an assignment from the insured in Meggs, but no assignment was secured from the insured in the case under consideration.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.
NOTES
[1] The rationale of cases supporting this position is not applicable in Mississippi because claims for personal injuries may be assigned under section 11-7-3 Mississippi Code Annotated (1972). Farmer v. Humphreys County Memorial Hospital, 236 Miss. 35, 109 So.2d 356 (1959); Anderson v. Kelly, 99 So. 382 (Miss. 1924); Wells v. Edwards House and City Railway Co., 96 Miss. 191, 50 So. 628 (1909).