716 So.2d 673 (1998)
Eva KAPLAN, Appellant,
v.
HARCO NATIONAL INSURANCE COMPANY, Appellee.
No. 95-CA-01154-COA.
Court of Appeals of Mississippi.
March 24, 1998.
Certiorari Denied June 25, 1998.
*674 Marc A. Biggers, Lonnie D. Bailey, Upshaw Williams Biggers Beckham & Riddick, Greenwood, for Appellant.
H.D. Brock, Whittington Brock Swayze & Dale, Greenwood; Sam D. Blair, Jr., Heiskell Donelson Bearman Adams Williams & Caldwell, Memphis TN, for Appellee.
Before McMILLIN, P.J., and HINKEBEIN and SOUTHWICK, JJ.
SOUTHWICK, Judge, for the court:
¶ 1. The original opinion is withdrawn and the following is substituted. The motion for rehearing is denied.
¶ 2. Eva Kaplan challenges the grant of summary judgment by the Circuit Court of Leflore County in favor of Harco National Insurance Company. Kaplan claims that the trial court erred in the following respects: (1) granting summary judgment to Harco; (2) finding that Kaplan did not have standing to pursue a direct action against Harco; (3) ruling that the bad faith claims of Russell Peters and Paradise Trucking, Inc. were not assignable; and (4) determining that the actions of Harco did not rise to the heightened level of tortious conduct sufficient to allow a jury to consider whether to assess punitive damages. Finding the trial court in error, we reverse and remand.

FACTS
¶ 3. On February 13, 1992 Eva Kaplan was involved in an accident with a tractor-trailer driven by Russell Peters. At the time of the accident, Peters was employed by Paradise Trucking, Inc.; his tractor was leased to them, and it carried the ICC number registered to Paradise. The trailer attached to his tractor was owned by Paradise and insured by Harco for Paradise. After the accident, Peters called Paradise to report the accident. When Peters went to the Paradise offices, he discussed the accident with Duckworth, the insurance agent who obtained the Harco insurance policy for Paradise. Duckworth had a copy of the accident report which he showed to Peters as they discussed the accident. According to Peters, Duckworth warned him not to discuss the accident with anyone, especially lawyers, and told Peters that he would take care of it. Peters testified that no one from Harco has ever contacted him to discuss the accident.
¶ 4. In March of 1992, Kaplan's attorney contacted Paradise about her claim, and Paradise referred them to Duckworth. Duckworth stated that an adjuster would contact Kaplan's attorney. On July 16, 1992 Peters was served with the suit and reported it to Paradise. Peters also discussed the suit with Duckworth who again told Peters that he would take care of it. No contact was made until receipt of the lawsuit by Harco in August of 1992. Dave Leary, a claims manager with Harco, contacted Kaplan's attorney who advised Leary that unless Harco responded, Kaplan would seek default judgment. Harco failed to respond; therefore, on October 13, 1992, default judgement was entered against Peters and Paradise in the amount of $35,000 plus interest and costs.
¶ 5. In an effort to collect on the judgment, Kaplan's attorney provided a copy of the default judgment to both Peters and Paradise on December 3, 1992. A copy of the judgment was also furnished to Duckworth and Leary. Throughout the process, Kaplan was unsuccessfully trying to obtain a copy of the policy. When efforts through correspondence failed, Kaplan filed a writ of garnishment to ascertain the existence of the policy. Harco failed to comply with the writ of garnishment and claimed that there was no policy in effect that provided Paradise with liability coverage on February 13, 1992. This claim was later proven to be false based on the existence of the MCS-90 endorsement to the policy.
¶ 6. The purpose of the MCS-90 endorsement is to protect the public against undercapitalized and underinsured common carriers. The endorsement provides that the insurer *675 will pay any final judgment recovered against the insured from negligence in the operation of commercial motor vehicles. The insurer has to pay the injured party despite a limitation or condition in the policy or endorsement stating otherwise. Additionally, the duty to pay is not contingent on the vehicle being specifically described in the policy.
¶ 7. Kaplan secured assignments from both Peters and Paradise. These assignments gave Kaplan "any and all rights, choses in action, causes of action or claims of any kind" that Paradise and Peters may have against Harco arising out of the accident. Based on these assignments, Kaplan filed suit against Harco for bad faith on December 15, 1993. Along with the complaint, Kaplan served a request for production of documents, specifically requesting a copy of the policy. Harco failed to respond; therefore, Kaplan filed a motion to compel on February 25, 1994. On or about March 2, 1994 Harco produced a policy, but it was missing the MCS-90 endorsement. A copy of the complete policy was not produced until July 12, 1994 during Duckworth's deposition. This policy contained the MCS-90 endorsement. Based on the endorsement Kaplan amended her complaint.
¶ 8. The amended complaint set forth a direct cause of action against Harco. After being served with the amended complaint, Harco paid the default judgment entered against Peters and Paradise and sought summary judgment in this action. The trial court granted summary judgment finding that Kaplan did not have standing to pursue a direct action against Harco, that the action for punitive damages for bad faith was not assignable by Peters and Paradise, and that the alleged actions of Harco did not rise to the necessary level of tortious conduct for punitive damages.

DISCUSSION

1. Summary Judgment
¶ 9. Kaplan argues that the trial court erred in granting summary judgment to Harco. We resolve the present appeal on questions of law, not fact. Thus whether the trial court was right or wrong on its interpretation of the law, and not on its determination of whether there were disputes of material fact, is what we address. These legal issues, as all legal questions on appeal, are addressed de novo. Mississippi Farm Bureau Cas. Ins. Co. v. Curtis, 678 So.2d 983, 987 (Miss. 1996).

2. Direct Action
¶ 10. Kaplan claims to have a direct cause of action against Harco based on the MCS-90 endorsement. The portion of the endorsement that Kaplan claims gives her the standing to sue reads as follows: "It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment." The language of this passage is important for two reasons: (1) it identifies Kaplan as a judgment creditor and not a third party beneficiary as argued by Kaplan and (2) it defines the cause of action as one to compel payment. No other cause of action against the insurer is contemplated by the endorsement. Payment has been made in this case and there is nothing left to compel.
¶ 11. Kaplan is a judgment creditor of Harco by virtue of the MCS-90 endorsement. In Mississippi direct actions by third parties to insurance policies are prohibited absent specific statutory or contractual authority. Westmoreland v. Raper, 511 So.2d 884, 885 (Miss. 1987). The endorsement in this case provides authority for the judgment creditor to sue the insurer to compel payment. There was payment. Kaplan's standing under the endorsement expired with payment.

3. Assignment
¶ 12. Kaplan disputes the trial court's conclusion that a bad faith claim with relief sought for punitive damages could not be assigned by Peters and Paradise to Kaplan. The trial court relied on a case barring assignments of a statutory penalty. National Sur. Corp. v. State, 189 Miss. 540, 198 So. 299 (1940).
*676 ¶ 13. To resolve this issue, we find it helpful to divide it into two questions. The first is whether the bad faith claim against Harco could be assigned at all, and secondly, even if assignable, would the assignee be able to seek punitive damages? Thus we are faced with something fundamental in this case: are certain interests so personal that if they are no longer owned by the original party who held them, they no longer exist at all? The answer in part comes from chipping away layers of case law that have built up in discussing assignments, and uncovering the basic common law and statutory rules.

a. Assignment of a claim for bad faith
¶ 14. The starting point in the analysis is that at common law, a chose in action was not assignable. Chicago, St. Louis & New Orleans R.R. Co. v. Packwood, 59 Miss. 280, 282-83 (1881); Davis v. Herndon, 39 Miss. 484, 504 (1860). By statute, Mississippi eventually changed the common law and held that "[a]ny chose in action or any interest therein, after suit has been filed thereon, may be sold or assigned the same as other property, whether such cause of action or any interest therein was heretofore assignable under the laws of this state or not." Miss.Code Ann § 11-7-7 (1972) (emphasis added). The bad faith claim that supports Kaplan's efforts in this case was a claim that Peters could, but never did bring against Harco. The statute that says "any chose of action" can be assigned "after suit has been filed thereon" is inapplicable since Peters never sued "thereon."
¶ 15. A different statute states an "assignee of a chose in action may sue for and recover on the same in his own name, if the assignment be in writing." Miss. Code Ann. § 11-7-3 (1972). That is an independent basis for an assignment and has been held not to be in conflict with the previously-quoted statute that requires a suit by the original party in interest to have been filed. Solomon v. Cont'l Baking Co., 174 Miss. 890, 166 So. 376 (1936).
¶ 16. The phrase "chose in action" is one of the dated legal phrases whose specific meaning tends to get blurred. It simply means a "right of bringing an action or right to recover a debt or money." BLACK'S LAW DICTIONARY 241 (6th ed. 1990). Without relying on these statutes, the supreme court found "that any action which is brought for recovery of damages for the commission of an injury to person or property is a personal action ... and, of course, would be assignable." Leavenworth & Son, Inc., v. Hunter, 150 Miss. 245, 267, 116 So. 593, 596 (1928).
¶ 17. No Mississippi case has heretofore specifically discussed assignments of a bad faith claim against an insurance company. Our research discovered thirty-five states that permitted such assignments, and only Tennessee does not. Dillingham v. Tri-State Ins. Co., 214 Tenn. 592, 381 S.W.2d 914 (1964). Research by other courts has caused them also to conclude that a majority of jurisdictions permit such assignments. E.g., Medical Mut. Liab. Ins. Soc'y of Maryland. v. Evans, 330 Md. 1, 622 A.2d 103, 116-17 (1993); 2 ROWLAND H. LONG, LAW OF LIABILITY INSURANCE § 5A.21 (1996). The cases usually have dealt with an assignee suing for an amount in excess of the policy limits. See, e.g., Terrell v. Western Cas. & Sur. Co., 427 S.W.2d 825, 827 (Ky. 1968). The suits often have alleged damages to an insured based on an insurer's failure to comply with an implied good faith settlement obligation. E.g., Aves v. Shah, 258 Kan. 506, 906 P.2d 642 (1995); see LONG, LIABILITY INSURANCE § 5A.21. If a breach of an insurance company's obligation prevented settlement or led to an indifferent defense, and at trial a judgment greater than the policy limits resulted, then that breach may have damage the insured. In other words, if there was a bad faith refusal to defend or to settle within the policy limits or at least for less than the ultimate judgment, then the bad faith has a causal relation to the higher judgment.
¶ 18. Analytically it is important to separate two parts of the judgment against the insured. The policy limits of the insurance contract are to be paid if there is coverage  no bad faith issues arise as to that. If the judgment is for more than the policy amount and "but for" a breach of the company's obligations that excess amount would not have been awarded against the insured, then many courts allow the insured to recover that *677 or assign his right to do so to the injured party. Most courts permit the entire amount of the excess to be recovered for a breach of a duty to defend or for failure to settle. Newhouse v. Citizens Sec. Mut. Ins. Co., 176 Wis.2d 824, 501 N.W.2d 1, 6-7 (1993) (defend); Safeco Ins. Co. Of America v. Butler, 118 Wash.2d 383, 823 P.2d 499, 506 (1992) (defend); Soto v. State Farm Ins. Co., 83 N.Y.2d 718, 723, 613 N.Y.S.2d 352, 354, 635 N.E.2d 1222, 1224 (1994) (settle); Helmbolt v. LeMars Mut. Ins. Co., 404 N.W.2d 55, 60 (S.D. 1987) (settle). The Michigan Supreme Court has held that "an insurer's liability for breach of the contractual duty to defend is limited to the policyholder's assets not exempt from legal process." Sederholm v. Michigan Mut. Ins. Co., 142 Mich. App. 372, 370 N.W.2d 357, 360 (1985) (describing Supreme Court precedent), (citing ROBERT E. KEETON, BASIC TEXT ON INSURANCE LAW, § 7.8(b) (1971)). That position is based on the idea that a judgment one million dollars in excess of policy limits against an insured with few assets, has not in fact damaged the insured by one million dollars.
¶ 19. Punitive damages occasionally were sought in these cases. Sederholm v. Michigan Mut. Ins. Co., 142 Mich. App. 372, 370 N.W.2d 357, 360 (1985). However, most of the suits dealt with recovery of amounts in excess of the policy limits.
¶ 20. We conclude that bad faith claims are actions for the recovery of damages that under Mississippi statutes are assignable. There is no issue here of the judgment being greater than the policy limit, so we need not resolve whether the measure of damages is the entire excess amount of a judgment. This assignment was of claims for bad faith breach of several obligations, but the judgment was for less than the policy limits. The right to recover an amount within the coverage of the policy could be assigned to the injured party.

b. Assignment of right to claim punitive damages

¶ 21. The issue of whether to allow an assignee to sue for punitive damages is more difficult. A preliminary question will be addressed first.
¶ 22. The assignment here specifically conveyed "any claims" for damages that might have arisen from a breach of Harco's obligations to its insured. Thus a claim for punitive damages arising from a bad faith denial of coverage was conveyed to Kaplan. The first Complaint refers to the assignment, states that Harco owed Paradise and Peters certain duties, and that Harco "wilfully and maliciously failed to honor its obligations... ." The punitive damages that are sought are for Harco's "willful refusal to honor its contractual obligations and in attempting to hide the existence of liability coverage from Defendants' insureds." Thus the punitive damages derive from Harco's alleged breach of its duties towards Peters and Paradise. We agree that it is only for a possible breach of the duties owed to its insureds, and not for some independent obligation to a third party, that forms the basis of a suit for punitive damages by Kaplan against Harco.
¶ 23. Kaplan wanders fairly far afield from that assigned claim by the time of her Second Amended (and final) Complaint. The first count states that the action is brought as assignee of Paradise and Peters. However, other sections of this final version of the complaint seek actual and punitive damages for a breach of a duty owed by Harco to Kaplan. No such duty supporting damages has been recognized in Mississippi before and we do not embrace one here. What is an open question is whether as an assignee Kaplan may bring the suit that Peters and Paradise could have brought on their own behalf. Kaplan brought such a claim, even if joined with other claims. The assigned claim based on a possible breach of a duty owed to Harco's insureds is the limit of our following discussion.
¶ 24. We now turn to whether the assignment is valid. The trial court relied upon a case that prohibited the assignment of a statutory penalty and by analogy applied it to deny assignability. National Sur. Corp. v. State, 189 Miss. 540, 551, 198 So. 299, 301 (1940). The case dealt with pay certificates issued to teachers by the county superintendent. These pay certificates were assigned *678 by various teachers to Rodgers in return for advance payment of their value. When Rodgers attempted to cash in the certificates, payment was refused because there were insufficient funds in the treasury to pay the face value. Rodgers sought to collect through the county superintendent's surety pursuant to Section 6732, Code of 1930. This section required the superintendent to pay certificate holders for the face value of the certificates that were in excess of the budget for the current fiscal year. The court quoted general language that "a right to recover a penalty is not assignable." National, 189 Miss. at 551, 198 So. at 301. The court also found that the "right to sue is governed by statute." Id. The penalty was the obligation of the superintendent and his surety to the holders of pay certificates if certain conditions were met. The court found that the right to redeem the certificates could be assigned because the statute itself allowed "holders" of certificates, whoever they may be, to sue. Id. at 551-52, 198 So. at 301-02.
¶ 25. Another case addressed the classic statutory penalty applicable to a wilful trespass in order to cut timber. Leavenworth & Son, Inc. v. Hunter, 150 Miss. 245, 116 So. 593 (1928); statutes recodified as Miss. Code Ann. §§ 95-5-1, 95-5-5, and 95-5-7 (Rev. 1994) ($5 per tree at time of suit), repealed by 1989 Miss. Gen. Laws, ch. 558, § 2. The court ultimately found that this was not an action solely for a penalty, but was one for recovery of damages to property. Thus the grantee of the property could bring suit. Leavenworth, 150 Miss. at 267, 116 So. at 596.
¶ 26. Both cases make general statements that statutory penalties may not be assigned, but neither ultimately barred assignment of the claims at issue in each case.
¶ 27. A final case did bar assignment of the right to sue for recovery of the principal and interest paid if the loan is usurious. Fry v. Layton, 191 Miss. 17, 2 So.2d 561 (1941). The court went through a review of case law from other states before agreeing with the lender as follows:
[T]he purpose of the usury acts is to protect the necessitous borrower, and the right of recovery is personal to him and is confined to him, those who are parties to the contract, their privies in blood or estate, or those who would be affected by the usurious transaction, and the right of recovery is not available to a stranger to the transaction.
¶ 28. Fry, 191 Miss. at 25, 2 So.2d at 565. A borrower's statutory right to recover principal was penal since it went well beyond actual damages, and therefore that right must be strictly construed in its application. Id. at 30, 2 So.2d at 565. The plaintiff was in "the champertous business of gathering up these claims for a nominal consideration and suing thereon in his own name to recover the principal and interest of these loans  a profitable business indeed if permitted." Id. at 29-30, 2 So.2d at 565. The assignment was voided.
¶ 29. The supreme court has interpreted the assignment statute to apply to all choses in action that would survive the initial claimant's death, while purely personal claims such as for libel or slander, which do not survive death, are not assignable. Catchings v. Hartman, 178 Miss. 672, 174 So. 553 (1937) (stating that libel/slander claims do not survive death); Farmer v. Humphreys County Mem. Hosp., 236 Miss. 35, 42-43, 109 So.2d 356, 360 (1959), citing Wells v. Edwards Hotel & City Ry. Co., 96 Miss. 191, 194, 50 So. 628, 629 (1909) (finding that survivability is test of assignability). The correlation between assignment and survivability is evident. In both situations, someone other than the initial claimant is bringing suit. If an estate can succeed to the claim, then in most cases so can an assignee.
¶ 30. The state supreme court more recently reviewed the case law on what torts survive the death of the initial claimant. Flight Line, Inc. v. Tanksley, 608 So.2d 1149 (Miss. 1992). The writing judge disagreed with prior supreme court precedents that had retained some of the common law distinctions between which causes of action could be assigned. The holding, though, was to overrule one prior decision that had concluded that a loss of consortium claim did not survive. Flight Line, 608 So.2d at 1169, overruling Scott v. Munn, 245 Miss. 120, 146 So.2d 564 (1962).
*679 ¶ 31. A statute makes clear that a punitive damage claim against a party who dies before judgment, also dies. Miss. Code Ann. § 91-7-235 (Rev. 1994); Mervis v. Wolverton, 211 So.2d 847, 848 (Miss. 1968). Even if survivability of a tort claim is the test for its assignability, we are dealing with the reverse claim from that in the statute. When the wrongdoer is deceased, the public policy reasons for punishment are reduced. That does not answer whether the victim's claim survives or is assignable. The supreme court, noting that statutory distinction, long ago held that punitive damages that could have been claimed by a deceased for a brutal beating that caused his death, survived to the estate. Wagner v. Gibbs, 80 Miss. 53, 63, 31 So. 434, 435 (1902). Such a claim would fall under the wrongful death statute, which is a discrete category of claim that survives  a defendant is not exonerated financially if his tort was so severe as to cause death. Miss. Code Ann. § 11-7-13 (1972).
¶ 32. Whether other punitive damage claims survive that a deceased might have had is unanswered. Could Peters's estate, for example, have brought suit against Harco for punitive damages on these same facts? The general statute for survivability of claims holds that an estate "may commence and prosecute any personal action whatever, at law or equity, which the testator or intestate might have commenced and prosecuted." Miss. Code Ann. § 91-7-233 (Rev. 1994). The survivability of "personal actions" is arguably more limited than the statute holding that all "choses in action" may be assigned.
¶ 33. What few other states that have considered the specific question are of mixed views and form of analysis. The California courts specifically prohibit the assignment of punitive damage claims for bad faith failure to pay a claim by an insurance company. Murphy v. Allstate Ins. Co., 17 Cal.3d 937, 132 Cal. Rptr. 424, 428, 553 P.2d 584, 588 (1976). This was considered a purely personal cause of action that could not be assigned. Id. New York, on the other hand, found that "there is no reason why this cause of action [for punitive damages in a bad faith case] also cannot be assigned." Oppel v. Empire Mut. Ins., 517 F. Supp. 1305, 1307 (S.D.N.Y. 1981).[1] Arizona is among other states who permit assignment of a claim such as this. Clearwater v. State Farm Mutual Automobile Ins. Co., 161 Ariz. 590, 780 P.2d 423, 426 (App. 1989).
¶ 34. Finally, we examine the nature of punitive damages in Mississippi.
[P]unitive damages are not awarded to compensate a party for an injury, but are granted in the nature of punishment for the wrong doing of the defendant as an example so that others may be deterred from the commission of similar offenses, thereby, in theory, protecting the public.
¶ 35. Mississippi Power Co. v. Jones, 369 So.2d 1381, 1387 (Miss. 1979). Placing emphasis on the public benefit, the court has also stated that punitive damages "are awarded to the injured party as a reward for his public service in bringing the wrongdoer to account." Neal v. Newburger Co., 154 Miss. 691, 700, 123 So. 861 (1929). Without actual damages, punitive damages are not recoverable. Hopewell v. Trustmark Nat'l Bank, 680 So.2d 812, 820 (Miss. 1996). The earliest discovered explanation for the last point is that a claimant "has no right to maintain an action merely to inflict punishment upon some supposed wrongdoer. If he has no cause of action independent of a supposed right to recover exemplary damages, he has no cause of action at all." Western Union Tel. Co. v. Jennings, 110 Miss. 673, 675, 70 So. 830, (1916) (discussing Missouri law and quoting Hoagland v. Forest Park Highlands Amusement Co., 170 Mo. 335, 70 S.W. 878 (1902)). Punitive damages are a court-authorized windfall to a claimant, who in addition to receiving actual damages, is permitted extraordinary payment for the societal benefit of punishing especially egregious conduct.
*680 ¶ 36. These are the guiding principles and conflicting views as we determine whether the common law continues to bar an assignment of a claim for punitive damages, or whether by statute or case law a different answer must be given. First, punitive damages are a remedy, not a cause of action. A claim for punitive damages is not itself a chose in action. It is not free-standing, i.e., if there are no actual damages, then there is no right to sue for punitive damages. The claim is one that the law allows a private individual to make for punishment. Thus if it is assignable, it is only if the assignment statute allows it to accompany an assignment of a chose of action in which it is recoverable. The actual damages here arise from the alleged bad faith failure to pay Paradise or Peters' claim by hiding the true details of the insurance contract.
¶ 37. Secondly, the claim for exemplary damages is akin to a statutory penalty, in that a branch of state government competent to authorize penalties  the judiciary instead of the legislature  has done so in this category of cases.
¶ 38. Finally, as a court-authorized penalty this claim for special damages is subject to substantial public policy limitations. The penalty is to punish a wrongdoer. The Fry formulation would allow this assignment. Without holding that Fry is the limit of the right of assignment of the present claim, we hold that the right goes at least this far. Fry stated that "the purpose of the usury acts is to protect the necessitous borrower, and the right of recovery is personal to him and is confined to him, those who are parties to the contract, their privies in blood or estate, or those who would be affected by the usurious transaction, and the right of recovery is not available to a stranger to the transaction." Fry, 191 Miss. at 17, 2 So.2d at 561. Kaplan was the injured party in a motor vehicle accident, whose injuries she is entitled to try to demonstrate should have been compensated by the policy with Harco. It is said that Harco unreasonably interfered with discovery of that coverage. Thus Kaplan was "affected by the bad faith," which is the limit stated in Fry.
¶ 39. We permit Kaplan to bring this claim even though a reasonable limit would be to permit only those who were not strangers to the contractual transaction with Harco to sue, i.e., only permit suit by those in privity with Harco. However, we find that the public policy goal of punitive damages is better served by allowing the injured person whose claim potentially has been egregiously complicated by the insurance company's actions to be assigned the punitive damage claim. Nothing in this opinion creates a right to punitive damages in the absence of the assignment.
¶ 40. To conclude our analysis we must discuss whether, even if the punitive damage claim is assignable, it can support litigation once the actual damages have been compensated. We have already discussed the requirement that actual damages have been incurred before punitive damages may be awarded. The issue that we face now is whether an insurance company may engage in the type of conduct for which punitive damages could be justified, but then avoid exposure to such liability by paying the underlying claim after suit has been brought against it. The conduct justifying punitive damages has been defined as "(1) malice, or (2) gross negligence or reckless disregard for the rights of others." Universal Life Ins. Co. v. Veasley, 610 So.2d 290, 293 (Miss. 1992).
¶ 41. We look at Harco's conduct. Kaplan brought suit against Peters and Paradise on July 16, 1992. A default judgment was entered on October 13, 1992, for $35,000. Harco allegedly was informed throughout this time period of the claim and of the question of coverage. On July 19, 1993, Peters and Paradise assigned all their possible claims as insureds to Kaplan in exchange for release of any personal liability. A new suit was filed against Harco and the other defendants on December 15, 1993. That suit sought the $35,000 owed on the judgment against Peters and Paradise and also sought punitive damages. After further proceedings, a deposition was taken of Harco's claims manager on August 26, 1994. Allegedly as a result of statements made during the deposition and due to the production of the MCS-90 endorsement, *681 Harco paid the $35,000 judgment about one month later.
¶ 42. The payment of $35,000 in advance of an adverse verdict from a jury may be a factor to weigh in appraising the egregiousness of Harco's over-all conduct. However, the fact that payment came almost two years after the judgment against its insured and over one year after the assignment means that Harco's conduct towards its insured had long been complete. For almost that entire time no complete copy of the policy had been provided, much less had there been an acknowledgment of coverage or an agreement to defend. Harco did not have the power nine months after suit had been brought against it to cancel its potential liability for punitive damages by making a belated but preemptive offer of the compensatory damages that were being sought in the suit. If Harco did have that power, then theoretically it would continue at least until the jury left to deliberate at the end of trial or even until the jury foreman was about to announce the verdict.
¶ 43. We express no opinion on the nature of Harco's conduct and especially not on whether punitive damages are appropriate here. All we are saying is that as assignee of the claim of an insured, Kaplan may bring the same claim for punitive damages that the insured could have brought. That claim is not terminated by Harco's payment of the amount of actual damages well after suit for actual and punitive damages was commenced.

4. Tortious Conduct
¶ 44. Kaplan's final argument is that the trial court erred in finding that Harco's actions did not rise to the heightened level of tortious conduct sufficient to allow a jury to consider punitive damages. Based on the facts presented, it may be possible to prove the following about Harco: Harco hid coverage both from Kaplan and its insureds; it failed to provide a defense or investigate the claim; it did not notify the insureds of its decision not to defend and a default occurred.
¶ 45. In insurance cases such as this one, the trial judge is responsible for reviewing all of the evidence before it to make the determination whether to submit the issue of punitive damages to the jury. Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172, 1183 (Miss. 1990). On appeal, we are required to review the briefs as well as the evidence in order to determine whether the trial judge erred in the determination. Id. at 1184. Through the years, a guideline has evolved for making such determinations. "Pursuant to this guideline, determination of whether to submit a punitive damages issue to the jury generally will be contingent on the determination whether the insurer denied the underlying policy or contract claim on an arguable basis." Id. Even in the absence of an arguable reason, submission of the issue of punitive damages to a jury still may not be warranted. Id. at 1185. These cases generally involve clerical errors or honest mistakes. See Weems v. American Sec. Ins. Co., 486 So.2d 1222, 1227 (Miss. 1986). Because of the inconsistency in the outcome of the arguable basis test, a second step of analysis must be taken. This consists of the court looking at the relevant facts to determine if a jury question exists on whether the insurer "committed a willful or malicious wrong." Id. at 1186-88.
¶ 46. A jury question exists on this record on whether Harco committed a wilful or malicious wrong sufficient to warrant punitive damages.
¶ 47. THE JUDGMENT OF THE CIRCUIT COURT OF LEFLORE COUNTY IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS ARE ASSESSED AGAINST THE APPELLEE.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., and COLEMAN, DIAZ, HERRING, HINKEBEIN, KING and PAYNE, JJ., concur.
NOTES
[1] This case was cited in Ward v. United States Fidelity & Guar. Co., 681 F. Supp. 389, 397 n. 12 (S.D.Miss. 1988), but the only conclusion reached by Judge Dan Russell was to deny summary judgment to the defendant because "[a]t this time, this Court is unable to conclude that as a matter of law punitive damages are not recoverable." Id. at 398. That tentative statement does not constitute a holding even of that federal court.